# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| JUDITH YARRINGTON, ELIZABETH CRAGAN, JULIA CRAIGHEAD and CAROLYN GREEN, individually, and on behalf of all others similarly situated, | : : : : : : | **No. 09-CV-2261 (RHK/RLE)** |
| Plaintiffs, | : : : | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL** |
| v. | : : | **OF CLASS ACTION SETTLEMENT** |
| SOLVAY PHARMACEUTICALS, INC., | : : | |
| Defendant. | : : | |

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................... 1

II.    STATEMENT OF THE CASE....................................................... 4

    A.    Litigation History ................................................................ 4

    B.    Discovery ............................................................................ 6

    C.    Settlement Negotiations ...................................................... 8

III.   SUMMARY OF THE SETTLEMENT TERMS AND THE NOTICE
      PLAN .......................................................................................... 9

IV.   CLASS ACTION SETTLEMENT PROCEDURE ........................... 12

    A.    The Court-Ordered Notice Program Is Constitutionally Sound And
Has Been Fully Implemented................................................. 12

        1.    Notice Standards ...................................................... 12

        2.    The Notice Program Has Been Fully Implemented And
Meets Applicable Standards ...................................... 13

V.     ARGUMENT ................................................................................ 14

VI.   ALL OF THE RELEVANT FACTORS SUPPORT FINAL APPROVAL
OF THE SETTLEMENT ................................................................ 19

    A.    The Settlement Is Entitled To A Presumption Of Fairness..................... 19

        1.    The Settlement Is The Product Of Serious, Informed,
Arm's-Length Negotiations After Protracted Investigation
And Litigation ............................................................ 19

        2.    The Parties Participated In Arm's-Length Negotiations
Before Experienced Neutral Mediators ........................ 19

    B.    Four Factors Weigh In Favor Of Settlement............................................. 20

        1.    The Likelihood Of Success On The Merits Weighed In
Favor Of The Settlement.............................................. 20

        2.    The Defendant's Financial Condition ........................... 23

        3.    Complexity and Expense of Further Litigation ............. 23

        4.    Class Members' Positive Reaction Supports Final Approval...... 24

    C.    The Plan Of Allocation Is Fair, Reasonable, And Adequate ................... 25

        1.    Applicable Standard.................................................... 25

    D.    The Settlement Class Should Be Certified............................................... 27

**TABLE OF CONTENTS**
**(continued)**

Page

1.    The Proposed Settlement Class Mirrors The Type Of Settlement Authorized By The United States Supreme Court ............................................................................... 27

2.    The Criteria For Certification Of The Settlement Class Under Rule 23 Are Satisfied ......................................................... 28

    a.    The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable .................................... 29

    b.    There Are Numerous Common Issues Of Law And Fact................................................................................... 30

    c.    The Named Plaintiffs' Claims Are Typical ..................... 31

    d.    The Named Plaintiffs And Their Counsel Adequately Represent The Proposed Settlement Class.................................................................................. 32

E.    The Proposed Settlement Class Meets The Predominance And Superiority Requirements Of Rule 23(B)(3)............................................ 33

1.    Common Questions Predominate ................................................. 34

VII.    CONCLUSION................................................................................................... 35

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alexander v. National Football League*
No. 76-123, 1977 U.S. Dist. LEXIS 15685 (D. Minn. Aug. 1, 1977) ................................ 15

*Alpern v. UtiliCorp United*
84 F.3d 1525 (8th Cir. 1996) ........................................................................... 31

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) ...................................................................................... 27

*Backman v. Polaroid Corp.*
910 F.2d 10 (1st Cir. 1990) (*en banc*) ............................................................. 21

*Beckmann v. CBS, Inc.*
192 F.R.D. 608 (D. Minn. 2000) ...................................................................... 28

*Bentley v. Legent Corp.*
849 F. Supp. 429 (E.D. Va. 1994), *aff'd without op. sub nom.* ........................... 21

*Blades v. Monsanto*
400 F.3d 562 (8th Cir. 2005) .......................................................................... 28

*Carpe v. Aquila, Inc.*
224 F.R.D. 454 (W.D. Mo. 2004) .................................................................... 32

*Coley v. Clinton*
635 17.2d 1364 (8th Cir. 1980)........................................................................ 30

*Cotton v. Hinton*
559 F.2d 1326 (5th Cir. 1977) ........................................................................ 17

*DeBoer v. Mellon Mort. Co.*
64 F.3d 1171 (8th Cir. 1995) ......................................................... 16, 17, 30, 31

*Donaldson v. Pillsbury Co.*
554 F.2d 825 (8th Cir. 1977) .......................................................................... 31

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156 (1974)....................................................................................... 12

*Fisher Bros. v. Phelps Dodge Indus., Inc.*
604 F. Supp. 446 (E.D. Pa. 1985) ................................................................... 17

*Galdi Sec. Corp. v. Propp*
87 F.R.D. 6 (S.D.N.Y. 1979) ......................................................................... 18

*Grunin v. Int'l House of Pancakes, Inc.*
513 F.2d 114 (8th Cir. 1975) ..................................................................... 16, 17

*Herman v. Legent Corp.*
50 F.3d 6 (4th Cir. 1995) ............................................................................... 21

*In re Airline Ticket Com'n Antitrust Litig.*
682 F.3d 679 (8th Cir. 2002) .......................................................................... 26

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Charter Comm'n, Inc. Sec. Litig.*
   No. MDL 1506, 2005 WL 4045741 (E.D. Mo. June 30, 2005)...........................15

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*
   410 F. Supp. 659 (D. Minn. 1974)...................................................................17

*In re Domestic Air Transp. Antitrust Litig.*
   148 F.R.D. 297 (N.D. Ga. 1993)....................................................................17

*In re Lease Oil Antitrust Litig.*
   186 F.R.D. 403 (S.D. Tex. 1999)....................................................................17

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*
   163 F.R.D. 200 (S.D.N.Y. 1995)....................................................................15

*In re Retek, Inc. Sec. Lit.*
   236 F.R.D. 431 (D. Minn. 2006)....................................................28, 31, 32, 34

*In re Select Comfort Corp. Sec. Lit.*
   202 F.R.D. 598 (D. Minn. 2001)............................................................30, 34

*In re St. Paul Travelers Sec. Litig.*
   No. 04-3801, 2006 U.S. Dist. LEXIS 23191 (D. Minn. Apr. 25, 2006)................16

*In re Workers' Comp.*
   130 F.R.D. 99 (D. Minn. 1990)....................................................................28, 32

*In re Xcel Energy, Inc., Sec. Deriv. & ERISA Litig.*
   364 F. Supp. 2d 1013 (D. Minn. 2005)...........................................................16

*In re: Wireless Tele. Fed. Cost Recovery Fees Litig.*
   396 F.3d 922 (8th Cir. 2005) ....................................................................passim

*Katun Corp. v. Clarke*
   484 F.3d 972 (8th Cir. 2007) ......................................................................14

*Levinson v. Prentice-Hall, Inc.*
   868 F.2d 558 (3d Cir. 1989)........................................................................21

*Liddell v. Board of Educ. of the City of St. Louis*
   126 F.3d 1049 (8th Cir. 1997) ....................................................................15

*Lockwood Motors, Inc. v. General Motors, Inc.*
   162 F.R.D. 569 (D. Minn. 1995).............................................................28, 30

*Marshall v. Holiday Magic, Inc.*
   550 F.2d 1173 (9th Cir. 1977) ....................................................................21

*Ngwanyia v. Gonzales*
   376 F. Supp. 2d 923 (D.Minn. 2005)...........................................................21

*Paxton v. Union Nat'l Bank*
   688 F.2d 552 (8th Cir. 1982) ......................................................................29

*Petrovic v. Amoco Oil Co.*
   200 F.3d 1140 (8th Cir. 1999) ....................................................................passim

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Phillips Petroleum Co. v. Shutts*
   472 U.S. 797 (1985) ................................................................................ 12

*Sondel v. Northwest Airlines, Inc.*
   No. 3-92-381, 1993 WL 559031 (D. Minn. Sept. 30, 1993) ............................. 29

*Stewart v. Rubin*
   948 F. Supp. 1077 (D.D.C. 1996), *aff'd* 124 F.3d 1309 (D.C. Cir. 1997) ............ 17

*Van Horn v. Trickey*
   840 F.2d 604 (8th Cir. 1988) ....................................... 16, 17, 18, 21

*Weiss v. Mercedes-Benz of N. Am.*
   899 F. Supp. 1297 (D.N.J. 1995) ................................................ 20

*Wellman v. Dickinson*
   497 F. Supp. 824 (S.D.N.Y. 1980), *aff'd* 647 F.2d 163 (2d Cir. 1981) ............... 18

*Weme v. Freeway Ford, Inc.*
   No. EM 02-009737, 2003 WL 23741867 (Minn. Dist. Ct. April 11, 2003) ........... 32

*West Virginia v. Chas. Pfizer & Co.*
   314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ............. 21

### STATUTES

Federal Rule of Civil Procedure
   23(a) ............................................................................. 28, 29
   23(a)(1) .............................................................................. 29
   23(a)(2) ........................................................................... 30, 31
   23(a)(4) ........................................................................... 32, 33
   23(b)(3) ...................................................................... 27, 29, 34
   23(e) ........................................................................... 1, 16, 18

Minnesota Statutes
   § 325D.09, *et seq.* ................................................................. 4
   § 325D.13 ......................................................................... 35
   § 325D.43, *et seq.* ................................................................. 4
   § 325D.44 ......................................................................... 35
   § 325F.67 ........................................................................ 4, 35
   § 325F.68, *et seq.* ................................................................. 4
   § 325F.69 ......................................................................... 35

### OTHER AUTHORITIES

4 *Newberg on Class Actions* ("*Newberg*") § 11.41 (4th ed. 2002) ...................... passim

*Manual for Complex Litigation*
   § 21.312 (4th ed. 2004) ....................................................... 12, 15, 16

Named Plaintiffs, Judith Yarrington, Elizabeth Cragan, Julia Craighead, and

Carolyn Green, individually, and on behalf of all others similarly situated ("Plaintiffs"),

pursuant to Federal Rule of Civil Procedure 23(e), submit this Memorandum of Law in

Support of Motion for final approval of class action settlement and final certification of

settlement class.  For the reasons stated herein, this Court should find that the settlement

satisfies the final approval criteria that a settlement be "fair, reasonable, and adequate,"

under Fed. R. Civ. P. 23(e), and therefore grant final approval of the settlement and

dismiss this action.

## I.   <u>INTRODUCTION</u>

Plaintiffs have entered into a settlement with Defendant Solvay Pharmaceuticals,

Inc. ("Solvay" or "Defendant") resolving this litigation.  The Parties executed the

Settlement Agreement on August 25, 2009.[1]  (Declaration of Daniel E. Gustafson

("Gustafson Decl."), Ex. A; Declaration of Michael W. Sobol ("Sobol Decl."), ¶ 21.).[2]

Preliminary approval of the Settlement and approval of the notice plan was granted by

this Court on September 18, 2009.  (Docket No. 14.)  Notice publication was completed

in accordance with the Notice Plan.  (Declaration of Katherine Kinsella, filed herewith

"Kinsella Decl.")  The deadline for objections and exclusions passed on January 2, 2010.

---

[1] The definitions in the Settlement Agreement are hereby incorporated as though fully set forth in this memorandum, and capitalized terms shall have the meanings attributed to them in the Settlement Agreement.

[2] Attached as Exhibit A to the Declaration of Daniel E. Gustafson filed in Support of Plaintiffs' Motion for Preliminary Settlement Approval (Docket No. 10) is the Settlement Agreement and Release, hereinafter "Settlement Agreement."

No timely objections to the Settlement were made[3] and only two class members excluded themselves.  As of January 23, 2010, Class Members already submitted 845 claims. (Declaration of Joel Botzet With Respect to Notification and Requests for Exclusion ("Botzet Decl.") ¶ 9 filed herewith.)  The deadline to submit claims is March 17, 2010.

As determined by the Court in granting preliminary approval of the Settlement, the terms of the proposed Settlement are fair, reasonable, and adequate as to the Settlement Class Members and made in good faith after more than five years of hard-fought, highly contested litigation, and extensive arms-length negotiations, including several mediation sessions.  On the basis of a well-informed assessment of the strengths and weaknesses of the Parties' positions, Plaintiffs, with the support of Solvay, request the Court grant final approval of the Settlement.

The Settlement Class is defined as: all natural persons who purchased Estratest and/or Estratest H.S. in any state of the United States of America other than the State of California[4] from March 8, 1998 until the date notice is first disseminated pursuant to the Notice Plan.  The Settlement Class excludes: (i) all persons who timely and validly request exclusion from the Settlement Class; (ii) Solvay's officers, directors, and employees; (iii) Solvay's attorneys; (iv) Plaintiffs' attorneys; (v) Judge Timothy J. McManus and the members of his staff and immediate family; and (vi) Judges Richard H.

---

[3] Although one untimely objection was filed by Lee M. Sweeney on January 6, 2010 (Docket No. 28), it was subsequently withdrawn on January 14, 2010 (Docket No. 30).

[4] Consumers in California are not part of the Settlement because a separate case was filed against Solvay on behalf of California consumers and third-party payors.  That case has also resolved in Settlement which has been granted final approval.  As of this filing, upon information and belief, fewer than 150 consumers have made claims in that settlement.

Kyle and Raymond L. Erickson, and the members of their staff and immediate family.

The principal terms of the Settlement include a cash payment of $16.5 million (the "Settlement Fund") which has been deposited into a secure investment account titled "Estratest Consumer Litigation Settlement Fund," for the benefit of the Settlement Class, for the costs of notice, claims administration, service/incentive awards to the Named Plaintiffs and attorneys' fees and costs ("the Account"). (*See* Settlement Agreement, § V.) The $16.5 million common fund is without any reversion to Defendant. Any and all monies remaining in the Settlement Fund after the distributions described above shall be distributed *cy pres* to appropriate charitable or nonprofit organizations or foundations to be agreed upon by the Parties, subject to Court approval. (*Id.*) This is a rational plan of allocation that will benefit class members, both directly where possible, and indirectly otherwise.

In accordance with the approved notice plan, and as set forth more fully below, notice of the proposed settlement has been mailed to class members upon request, has been published in major publications, has appeared on various health and menopause-related websites, and has been posted on a settlement website, www.estratestsettlement.com (the "Settlement Website"), as well as on the websites of Settlement Class Counsel. (*See* http://www.LieffCabraser.com/hormone-drug.htm and http://www.gustafsongluek.com).

Upon final approval of the Settlement, Plaintiffs and the Settlement Class will release Solvay from all claims, whether known or unknown, relating to any and all manner of non-personal injury claims or liabilities that have been or could have been

asserted in this action regarding Solvay's marketing, advertising and sales of Estratest. (*See* Settlement Agreement, § V.)

This Settlement is reasonable and the Court should grant final approval.

## II.   <u>STATEMENT OF THE CASE</u>

### A.   <u>Litigation History</u>

This class action was brought against Solvay Pharmaceuticals, Inc. ("Solvay") and its parent, Solvay America (collectively "Defendants") by Plaintiff Judith Yarrington ("Yarrington"), on behalf of herself and all others similarly situated, who purchased and ingested Estratest and Estratest H.S. (collectively "Estratest"), hormone replacement therapy drugs sold by Solvay, after March 8, 1998.  (Sobol Decl., ¶ 6.)  Yarrington commenced her class action complaint in the District Court for the First Judicial District, Dakota County, Minnesota on March 30, 2004 alleging that Solvay falsely and deceptively advertised Estratest as an "FDA-approved" drug when it was not.  (*Id.*, ¶ 7) Yarrington  asserted claims against Solvay for:  (1) violations of the Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*; (2) violations of the Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*; (3) violations of the Unlawful Trade Practices Act, Minn. Stat. § 325D.09, *et seq.*; (4) violations of the False Statement in Advertising Act, Minn. Stat. § 325F.67; (5) negligence; (6) breach of express and implied warranties; (7) fraud; and (8) misrepresentation.  (*Id.*)  Defendants denied liability and raised numerous defenses.  (*Id.*)

Defendants removed Yarrington's complaint to the United States District Court for the District of Minnesota on March 30, 2004, only to have the matter remanded to the

Dakota County District Court on February 24, 2005.  (Sobol Decl., ¶8.)

Defendants filed a Motion to Dismiss all claims on grounds that the state district court did not have personal jurisdiction over Solvay America; that Yarrington failed to state a claim and failed to plead with the required particularity; Yarrington failed to give notice of a breach of warranty; and on grounds that the FDA had primary jurisdiction over the drug's approval process.  (Sobol Decl., ¶ 9.)  The state district court granted Defendants' motion in its entirety and dismissed Yarrington's action on September 25, 2005.  Yarrington appealed.  (*Id.*, ¶ 10)  On September 26, 2006, the Minnesota Court of Appeals reversed the dismissal of the statutory claims, and remanded the motion to dismiss Solvay America for lack of personal jurisdiction, ordering that Yarrington be permitted to conduct discovery as to the issue of personal jurisdiction over Solvay America.  (*Id.*)

Yarrington moved for class certification and to amend her complaint to add the other Named Plaintiffs, to revise the class definition (to strike the qualifier "and ingested"), and to revise certain facts pled in the initial complaint regarding the time frame of Defendants' conduct.  Defendants moved to strike Yarrington's Motion for Class Certification or, in the alternative, to conduct discovery in conjunction with certain putative class member declarations submitted in support of the motion.  (Sobol Decl., ¶ 11.)  Solvay America moved for summary judgment for lack of personal jurisdiction. (*Id.*)

Yarrington and Defendants subsequently reached a stipulation regarding certain issues.  (Sobol Decl., ¶ 12.)  Specifically, it was agreed that Yarrington could amend her

complaint to add three Named Plaintiffs (Elizabeth Cragan, Judith Craighead, and Carolyn Green), but could not alter the proposed class definition to exclude the words "and ingested." (*Id.*)  In other words third-party payors were excluded from the operative class definition and were not part of the proposed class.  (*Id.*)

The court denied Yarrington's motion to amend, ruling that such amendment would expand the proposed class period beyond that originally alleged.  (Sobol Decl., ¶ 13)  Accordingly, the temporal scope of the allegedly deceptive marketing was limited to claims between March 8, 1998 and the end of 2004.  (*Id.*)   The court also dismissed Solvay America for lack of personal jurisdiction.  *Id.*

On April 24, 2009, Plaintiffs filed a revised motion for class certification.  Solvay filed its opposition on June 1, 2009.  In the course of briefing the class certification issue, the Parties moved closer to the Settlement. The class certification hearing date was continued at the Parties' request.  Plaintiffs ultimately did not file a reply memorandum. (Sobol Decl., ¶ 14.)

**B.**   **Discovery**

As set forth above, this case has been extensively litigated over the past five-plus years.  During the course of litigation, the Parties conducted thorough discovery, both formally and informally.  (Sobol Decl., ¶ 15.)

With respect to informal discovery, Plaintiffs' Counsel conducted an extensive investigation of the claims alleged prior to filing Yarrington's complaint.  In this regard, counsel interviewed potential class members, gathered advertisements and marketing material for Estratest, reviewed information about the drug on the internet and in the

press, reviewed the drug's listing in the Physician's Desk Reference, and ascertained the regulatory status of the drug. (Sobol Decl., ¶ 15.) Counsel continued to monitor the regulatory status of the drug and to investigate how it was being marketed and perceived by the medical community throughout the litigation. (*Id.*) Plaintiffs' counsel was in contact with over 100 women who purchased Estratest. (*Id.*) Counsel for Plaintiffs also gathered sales data from IMS Health that informed their analysis with respect to the potential damages. (*Id.*)

Plaintiffs served Solvay with two sets of Requests for Production of Documents, two sets of Interrogatories, and one set of Requests for Admissions. (Sobol Decl., ¶ 16) Solvay produced more than 224,000 pages of documents to Plaintiffs. (*Id.*)

Plaintiffs took depositions of Solvay's corporate representatives, including Greg Tackoor, who testified regarding marketing and distribution of information regarding Estratest; Paul Harding, who testified with respect to issues surrounding personal jurisdiction over Solvay America; and Bruce McMillian and Susan Link, who testified regarding electronic data storage, email, and voicemail. (Sobol Decl., ¶ 16.)

Solvay served each Named Plaintiff with one set of Interrogatories, one set of Requests for Admissions, and two sets of Requests for Production of Documents. (Sobol Decl., ¶ 17.) In response to Solvay's discovery requests, Plaintiffs provided and produced sensitive and private medical information. (*Id.*) In addition, Solvay served subpoenas on or otherwise obtained documents from Plaintiffs' physicians, pharmacies, and insurers. (*Id.*)

Solvay took the depositions of each Named Plaintiff and her prescribing

physician(s).  (Sobol Decl., ¶ 18.)  Solvay also deposed Dr. Peter Rost, Plaintiffs' expert

on the issue of pharmaceutical marketing, whose affidavit was attached in support of

Plaintiffs' Motion for Class Certification.  (*Id.*)  Plaintiffs retained multiple other experts

to analyze damages and to opine regarding Estratest's regulatory status, and those experts

had begun preparing their reports at the time the Settlement was reached.

### C.    Settlement Negotiations

The Parties engaged in two formal but unsuccessful mediation sessions at the

Judicial Arbitration and Mediation Service (JAMS) in Los Angeles, California.  (Sobol

Decl., ¶ 20.)  The first session was facilitated by the Honorable Lourdes Baird (Ret.) in

December 2007.  (*Id.*)  A second mediation session was held on February 19, 2009,

facilitated by Justice John K. Trotter (Ret.). (*Id.*)  In anticipation of each mediation

session, the Parties submitted confidential mediation briefs which focused issues and

clarified the relative strengths and weakness of the Parties' positions.  (*Id.*)  At the

conclusion of the second mediation session, a settlement demand from Plaintiffs was

pending and the Parties agreed to continue a dialogue based on the progress made during

the meeting.  (*Id.*)

Counsel for Plaintiffs and Solvay stayed in communication with each other by

telephone during the months following the second mediation session.  (Sobol Decl. ¶ 21.)

On June 18, 2009, counsel for the Parties participated in an in-person settlement meeting

in Atlanta.  (*Id.*)  At that meeting, the Parties came close to reaching a verbal agreement

as to the monetary terms of the Settlement, other than attorneys' fees and costs.  (*Id.*)  For

several months thereafter, opposing counsel negotiated the terms of the Settlement

Agreement.  It was not until after all material terms were reached that the Parties discussed the amount of attorneys' fees and costs.  The Settlement Agreement was fully executed on August 25, 2009.  (*Id.*)

III.    **SUMMARY OF THE SETTLEMENT TERMS AND THE NOTICE PLAN**

The proposed Settlement provides a resolution of all claims brought against Solvay by Plaintiffs in the action.  (*See* Settlement Agreement, § IX.)  Pursuant to the terms of the Settlement, a cash sum of $16.5 million was deposited into a secure investment account (the "Account") for the benefit of the Settlement Class.  (*Id.*)  Until the Effective Date is reached, the Account will be jointly controlled by Solvay's counsel and Settlement Class Counsel and administered by Rust Consulting Group ("Rust Consulting"), who has been appointed Settlement Administrator.  (*Id.*)  The Settlement Fund will also be used to cover the costs of notice, claims administration, service/incentive awards to the Named Plaintiffs, and attorneys' fees and costs.  (*Id.*) Distribution of the Settlement Fund is governed by the detailed provisions of the Settlement Agreement.

Filed herewith is a fee petition for an award of fees, reimbursement of expenses, and an award of service payment to the Named Plaintiffs.  (Settlement Agreement, § V.) Although the final approval of the award of attorneys' fees to Settlement Class Counsel is a matter for the Court, Solvay does not object to Settlement Class Counsel's request.

Kinsella Media, LLC designed a comprehensive program for providing notice to the Settlement Class which was approved by the Court on September 18, 2009, and fully implemented in accordance with the Court's Order.  (Kinsella Decl., ¶ 9.)  The

components of the publication program are set forth in the Kinsella Declaration and in detail below.

Claims of Settlement Class Members are submitted to Rust Consulting under the following declaration: "I declare under penalty of perjury under the laws of the United States of America that the information provided in this Claim Form is true and correct to the best of my knowledge and belief."  (Settlement Agreement, § VII and Ex. A thereto.) Rust Consulting has discretion to request additional information from Settlement Class Members regarding payment for prescriptions if there is any indication of fraud, and to request such supplemental submission be made under penalty of perjury.  (*Id.*)

After payment of all notice and administration costs, Settlement Class Counsel's attorneys' fees and expenses, and the service/incentive awards to the Named Plaintiffs, all monies remaining in the Settlement Fund shall be distributed as follows:  Settlement Class Members who submit a valid and timely Claim Form will receive a cash payment. (Settlement Agreement, § V.B.  ) The maximum allowable recovery for each Settlement Class Member submitting a valid Claim Form will be thirty percent (30%) of the total amount that each claimant states that they have paid out-of-pocket for Estratest during the Class Period.  The maximum recovery recognizes that only a part of a Settlement Class Member's purchase price constituted an overcharge resulting from Solvay's alleged misrepresentation.  (Sobol Decl., ¶ __.)  This maximum percentage was based on Settlement Class Counsel's research of sales data regarding similar hormone replacement therapy drugs that Plaintiffs contend were not "FDA-approved," (and thus Plaintiffs would not contend were priced at a premium).  (*Id.*)  To the extent that aggregate claims

are in excess of the Settlement Fund, claimants shall be paid *pro rata* such that the cash payment to each claimant shall be reduced by the same percentage.  (*Id.*)

The Settlement Agreement provides that all funds remaining after the distributions described above shall be distributed *cy pres* to appropriate charitable or nonprofit organizations or foundations to be identified by the Parties and approved by this Court. (Settlement Agreement, § V.E.)  Settlement Class Counsel has tentatively identified a significant number of worthy charitable or nonprofit organizations for the cy pres, including, for instance, organizations and research universities, including the University of Minnesota, Vanderbilt University, Meherry Medical College, and the University of California at San Francisco, which are dedicated to menopause and related women's health issues.  After further research and investigation of worthy recipients, Settlement Class Counsel will seek this Court's approval of the *cy pres* distribution after the other distributions are complete.

Upon final approval of the Settlement, Plaintiffs and Settlement Class Members will release Solvay from all claims, whether known or unknown, relating to any and all manner of non-personal injury claims or liabilities that have been or could have been asserted in this action regarding Solvay's marketing, advertising and sales of Estratest. (Settlement Agreement, § IX.)

IV.     **CLASS ACTION SETTLEMENT PROCEDURE**

    A.     **The Court-Ordered Notice Program Is Constitutionally Sound And Has Been Fully Implemented**

        1.     **Notice Standards**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litig.*, § 21.312 (4th ed. 2004).  In order to protect the rights of absent class members, the Court must provide the best notice practicable to class members.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-175 (1974).  According to the *Manual for Complex Litigation.*, the settlement notice should:

> define the class; describe clearly the options open to the class members and the deadlines for taking action; describe the essential terms of the proposed settlement; disclose any special benefits provided to the class representatives; provide information regarding attorneys' fees; indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement; explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations; provide information that will enable class members to calculate or at least estimate their individual recoveries; and prominently display the address and phone number of class counsel and the procedure for making inquiries.

§ 21.312.

2. **The Notice Program Has Been Fully Implemented And Meets Applicable Standards**

The Class Notice satisfies all of the above criteria. The Notice Plan included: (a) direct notice by first-class mail to all individuals who request such notice; (b) broad notice through the use of paid media, including national newspaper supplements, national consumer magazines, and Internet banner advertising; and (c) electronic notice through an informational Internet website established at www.EstratestSettlement.com listed with major search engines. (Kinsella Decl. at ¶ 9.) Specifically, the Notice was published in national magazines, including *Better Homes & Gardens*, *Ladies' Home Journal*, and *Woman's Day* and in the newspaper *American Profile* and the Sunday newspaper supplements, *Parade* and *USA Weekend*. (*Id*. at ¶ 22-23.) As a result of the comprehensive paid media program, as outlined in detail in the Kinsella Declaration, an estimated 80.2% of the target demographic—menopause prescription/hormone replacement therapy users—were reached with an average estimated frequency of 2.0 times. (*Id*. at ¶ 27.)

As the Court-approved Claims Administrator, Rust Consulting, was responsible for providing direct mail notices, receiving requests for exclusions, general correspondence, Notice Package requests and completed Claim forms. Rust Consulting established and continues to maintain an automated toll-free telephone number (1-877-435-4068), where potential Class members could obtain information about the Settlement. (Botzet Decl. at ¶ 4.) This toll-free help line is accessible 24 hours a day, 7 days a week, with live support provided Monday through Friday, 9:00 a.m. to

5:30 p.m., EST.  (*Id.* at ¶ 7.)  As of January 16, 2010, there have been 1,218 calls to the toll-free support line.  (*Id.*)

Rust Consulting established and continues to maintain a Website dedicated to this Settlement (www.estratestsettlement.com) to provide additional information to Class members and to answer frequently asked questions.  (Botzet Decl. at ¶ 6.)  The Settlement Website provides generalized information, including:  (1) the full text of the Settlement Agreement; (2) a Long-Form Notice; (3) the Preliminary Approval Order; (4) the toll-free number and mailing address for the Settlement Administrator; (5) contact information for class counsel; (6) frequently asked questions; and (7) a printer-friendly version of the Claim Form.  (*Id.*)  The Settlement Website became operational on October 13, 2009, and is accessible 24 hours a day, 7 days a week.  (*Id.*)  As of January 16, 2010, there have been approximately 6,417 unique visitors to the website. (*Id.*)

As of January 16, 2010, 794 requests for a Notice Package have been received and mailed out by Rust Consulting.  (Botzet Decl., ¶ 8.)   Rust will continue to receive and respond to these requests.  (*Id.*)  As of January 23, 2010, 845 claim forms have been received.  (*Id.* at ¶ 9.)  Of the thousands of potential class members, only two (2) timely exclusion requests were made before the deadline and no objections were filed.  (*Id.*)

## V.   **ARGUMENT**

"Minnesota courts recognize a 'strong public policy favoring the settlement of disputed claims without litigation.'"  *Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007) (citations omitted); *Liddell v. Board of Educ. of the City of St. Louis*, 126 F.3d

1049, 1056 (8th Cir. 1997); *Alexander v. National Football League*, No. 76-123, 1977 U.S. Dist. LEXIS 15685, *34 (D. Minn. Aug. 1, 1977).  "In the class action context in particular, 'there is an overriding public interest in favor of settlement. . . .  Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *In re Charter Comm'n, Inc. Sec. Litig.*, No. MDL 1506, 2005 WL 4045741, at * 4 (E.D. Mo. June 30, 2005) (citation omitted).  A "strong public policy favors agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (citation omitted).

Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length, costs, and risks of the litigation.  As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."); 4 *Newberg on Class Actions* ("*Newberg*") § 11.41 (4th ed. 2002) (citations omitted).

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:  (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of notice of the settlement to all affected class members; (3) a formal "fairness hearing" or final settlement approval hearing, at which

class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  § 21.63 (4th ed. 2004).  Two of the three steps have already been completed here.

First, in granting preliminary approval, the Court conducted a preliminary evaluation of the Settlement and determined it to be within the range of reasonableness, and also provisionally certified the Settlement Class.  The second step was the implementation of the notice program, which has been completed in accordance with the Court's Preliminary Approval Order.  The third step is the final approval of the Settlement and the fairness hearing—the issue now before the Court.  This procedure, used by courts in this Circuit and endorsed by class action commentator Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests.  4 *Newberg* § 11.25.

The decision to approve a proposed settlement is committed to the Court's sound discretion.  *In re Xcel Energy, Inc., Sec. Deriv. & ERISA Litig.*, 364 F. Supp. 2d 1013, 1017 (D. Minn. 2005) ("*Xcel Energy II*"); *In re St. Paul Travelers Sec. Litig.*, No. 04-3801, 2006 U.S. Dist. LEXIS 23191 (D. Minn. Apr. 25, 2006); *DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988).  To be approved, a proposed class action settlement must be "fair, reasonable and adequate."  *Petrovic*, 200 F.3d  at 1148; *Van Horn*, 840 F.2d at 606; *Grunin v. Int'l House of Pancakes, Inc.*, 513 F.2d 114, 123 (8th Cir. 1975).  *See also*; Rule 23(e)(1)(C) Advisory Committee Notes to 2003 Amendments ("Subdivision (e)(1)(C) states the

standard for approving a proposed settlement that would bind class members.  The

settlement must be fair, reasonable, and adequate.").  The district court acts as a fiduciary

in reviewing a proposed settlement, and must guard the rights of absent class members.

*Grunin*, 513 F.2d at 123.  Final approval of this Settlement is warranted and well-within

the Court's sound discretion.

The Eighth Circuit has recognized that a class action settlement is a private

contract negotiated between the parties.  *In re: Wireless Tele. Fed. Cost Recovery Fees

Litig.*, 396 F.3d 922, 934 (8th Cir. 2005).  Under Rule 23(e), the court's role is to "ensure

that the agreement is not the product of fraud or collusion and that, taken as a whole, it is

fair, adequate, and reasonable to all concerned."  *Id.*; *see also DeBoer*, 64 F.3d at 1176;

*Van Horn*, 840 F.2d at 606.  Critically, "[j]udges should not substitute their own

judgment as to optimal settlement terms for the judgment of the litigants and their

counsel."  *Petrovic*, 200 F.3d at 1148.

Consistent with this principle, courts give significant consideration to the

judgment of experienced counsel who conducted arms-length negotiations.  *See, e.g.*, *In

re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659,

667 (D. Minn. 1974) ("the recommendation of experienced counsel is entitled to great

weight."); *see also In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 424-25 (S.D. Tex.

1999) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Stewart v. Rubin*,

948 F. Supp. 1077, 1099 (D.D.C. 1996), *aff'd* 124 F.3d 1309 (D.C. Cir. 1997); *In re

Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993); *Fisher

Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985); *Wellman v.*

*Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980), *aff'd* 647 F.2d 163 (2d Cir. 1981);

*Galdi Sec. Corp. v. Propp*, 87 F.R.D. 6, 10 (S.D.N.Y. 1979).  The presumption in favor

of such settlements reflects courts' understandings that vigorous negotiations between

experienced counsel protect against collusion and advance the fairness concerns

underlying Rule 23(e).

Where, as here, the settlement is the product of arm's-length negotiations

conducted by capable counsel with extensive experience in complex class action

litigation, the court begins its analysis with a presumption that the settlement is fair and

should be approved.  *See* 4 *Newberg* § 11.41.

Further, within the Eighth Circuit, courts evaluate four factors when considering

whether a settlement is fair and reasonable:  (1) the merits of the plaintiff's case weighed

against the terms of the settlement; (2) the defendant's financial condition; (3) the

complexity and expense of further litigation; and (4) the amount of opposition to the

settlement.  *In re Wireless.*, 396 F.3d at 932 (citations omitted); *see also Petrovic*,

200 F.3d at 1152; *Van Horn*, 840 F.2d at 607.  Each is discussed below and show that the

proposed settlement should be approved.

VI.   **ALL OF THE RELEVANT FACTORS SUPPORT FINAL APPROVAL OF THE SETTLEMENT**

    A.   **The Settlement Is Entitled To A Presumption Of Fairness**

        1.   **The Settlement Is The Product Of Serious, Informed, Arm's-Length Negotiations After Protracted Investigation And Litigation**

As set forth in detail above, in the more than five years of litigation, Plaintiffs have undertaken substantial investigation, fact-gathering, and formal discovery (including review of tens of thousands of pages of documents, retention and consultation of numerous experts, interviews with numerous consumers, multiple discovery requests, independent investigation of Defendants' representations and Estratest's regulatory status, and numerous depositions).  The Named Plaintiffs, and each of their treating physicians, have been deposed.  The Named Plaintiffs have produced sensitive, personal, medical records. (*See* Sobol Decl., ¶ 35.)  Moreover, the Parties engaged in extensive motion practice, including motions to dismiss (which included an appeal), motions for summary judgment, and a motion for class certification, before reaching the Settlement Agreement.  (*Id.*, ¶¶ 9-14)

        2.   **The Parties Participated In Arm's-Length Negotiations Before Experienced Neutral Mediators.**

As set forth above, settlement discussions in this case were protracted, with attempts to reach resolution spanning several years.  The Parties engaged in two mediation sessions with the assistance of experienced mediators in December 2007 and February 2009, and engaged in informal settlement discussions for several months thereafter, both in person and by telephone. (Sobol Decl., ¶ 20.)  Settlement discussions

that began in 2007 were not finally concluded until August, 2009.  It was not until after all material terms were reached that the Parties discussed the amount of attorneys' fees and costs.  Attorneys on both sides of this litigation are very experienced in the prosecution, defense, trial and settlement of class action litigation, including as it relates to consumer class actions, and are well-versed in the legal and factual issues implicated in this action.

The Court should find that the Settlement presented here is entitled to a presumption of fairness in light of the fact that it was reached only after extensive arm's-length negotiations, that there is no indication of collusion, and that Settlement Class Counsel and counsel for the Defendant are experienced in class action litigation, acted in good faith, and represented their clients' best interests in reaching the Settlement.

### B. Four Factors Weigh In Favor Of Settlement

#### 1. The Likelihood Of Success On The Merits Weighed In Favor Of The Settlement

The "most important consideration" in determining whether a settlement should be approved is "the strength of the case for the plaintiffs on the merits, balanced against the amount offered in settlement." *See, e.g.*, *In re Wireless,* 369 F.3d at 933; *see also Petrovic*, 200 F.3d at 1150.  The Court balances the uncertainty of relief against the immediate benefit provided in the settlement.  *Id.*, 396 F.3d at 933.  As one court noted in its discussion of this factor:  "the risks surrounding a trial on the merits are always considerable."  *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995).  As another court noted, "no matter how confident one may be of the outcome of

litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971)[5] Considerations include complexity, expense, and likely duration of the litigation. *See, e.g.*, *In re Wireless,* 369 F.3d at 932; *Van Horn,* 840 F.2d at 607; *Ngwanyia v. Gonzales*, 376 F. Supp. 2d 923, 929 (D.Minn. 2005); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

Plaintiffs' counsel has assessed the probability of ultimate success on the merits against the risks of establishing liability and damages and maintaining a class action through trial and appeal.  As noted above, and as extensively described in the accompanying declarations, Plaintiffs' counsel vigorously prosecuted this case and investigated the claims asserted against Solvay.  (*See* Sobol Decl.*,* ¶¶ 6-21.)  Plaintiffs' counsel were in contact with over 100 putative class members; took depositions of Defendants' corporate representatives, defended depositions of each Named Plaintiff and their prescribing physician(s), reviewed thousands of pages of documents; propounded document requests, interrogatories, and requests for admissions; and responded to extensive discovery requests propounded by Solvay, including the production of personal, sensitive medical information.  (*See Id.*)  In addition, the Parties litigated a

---

[5] Other decisions that demonstrate the enormous risks of litigation include:  *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd without op. sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) (dismissed after plaintiffs' presentation of case at trial); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (*en banc*) (after jury verdict in favor of plaintiffs and the class, reversing the district court's denial of judgment n.o.v. for defendants and remanding with instruction to dismiss the complaint); *Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558, 564-65 (3d Cir. 1989) (jury award of $2.3 million in punitive damages overturned).

motion to remand, a motion to dismiss and the appeal thereof, a motion for summary judgment, a motion to strike evidence, and a motion to amend the complaint. (*Id*.) At the time of settlement, Plaintiffs' counsel had prepared and filed a motion for class certification and all supporting papers and expert reports. (*Id*.) Plaintiffs' counsel had investigated market data regarding the sale of Estratest and similar drugs to determine the appropriate damages. The Parties had also engaged in two formal mediation sessions, for which they prepared confidential mediation briefs. (*Id*.) In sum, counsel for all Parties completed substantial investigation and discovery and negotiated the Settlement with complete knowledge regarding the strengths and weaknesses of the case and the amounts necessary to reasonably compensate Settlement Class Members for the harm suffered.

Absent the Settlement, this case (pending since 2004) would continue to generate vigorously disputed issues of law and fact. Even if a class had been certified in the litigation, Solvay would have hotly contested liability, causation, and damages at trial. Based on substantial information available to them through extensive formal and informal discovery, Plaintiffs' counsel concluded that the Settlement is well within the range of reasonableness in light of the best possible recovery and the attendant risks of litigation. *See In re Wireless*, 396 F.3d at 933 (quoting the district court as properly finding that, without settlement, the case would "'likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing.'")

Conversely, the Settlement provides Class Members with benefits they would not enjoy if the case were to proceed to trial. The Settlement provides Class Members with prompt and efficient relief. Moreover, because the individual actions would be cost-

prohibitive relative to the amount in controversy presented by any individual claim, the Class Members receive the benefit of being part of a class action.

The monetary benefits are substantial as well.  The proposed Settlement Agreement creates a non-reversionary Settlement Fund of approximately $16.5 million, plus interest, for unnamed Settlement Class Members.  Settlement Class Members who submit a valid Claim Form will be eligible to recoup a substantial percentage (up to 30%) of what they paid out of pocket for Estratest based on research of pricing data for similar hormone replacement therapy drugs.  (Sobol Decl., ¶ 22.)  If the Settlement Fund is not adequate to cover these claims, the claimants will be paid *pro rata*, with a payment or payments to appropriate *cy pres* recipients if there is a surplus.  (*Id.*, ¶ 23)  The Parties agree that the division of settlement proceeds that will be made with this allocation plan will be fair and reasonable.

In view of the risks of protracted litigation and the substantial, immediate benefit provided to Class Members through settlement, there can be little doubt that the Settlement merits final approval.

### 2.     The Defendant's Financial Condition

While the $16.5 settlement amount is substantial, Solvay Pharmaceuticals, Inc. is fully capable of funding the Settlement.  Indeed, the Settlement has been fully funded in advance of final approval.  While Solvay could perhaps pay more, "this fact, standing alone, does not render the settlement inadequate."  *Petrovic*, 200 F.3d at 1152.

### 3.     Complexity and Expense of Further Litigation

Here, although Settlement Class Counsel is confident regarding their ability to

ultimately succeed in this litigation, there are substantial risks to proceeding.  The factual

and legal issues in this action are complex, and the trial of Plaintiffs' claims under the

laws of 50 states would require substantial preparation and ultimately the presentation of

dozens of witnesses and numerous experts.  Also contributing to the complexity is the

regulatory status of Estratest before and after March 8, 2004, which Solvay hotly

contests, the nature and extent of Solvay's alleged misrepresentations, the reliance of the

Named Plaintiffs and Settlement Class Members on Solvay's alleged misrepresentations,

as well as damages allegedly sustained by the Settlement Class.  (Sobol Decl., ¶ 19.)

This case has been pending since 2004, and the Parties have demonstrated a

willingness to continue to contribute significant time and resources to the case.  Thus,

even if the Class were successful in winning at trial, proceeding to trial would add years

to the resolution of this case and could be further delayed by appeals, and "all the while

the class members would receive nothing."  *In re Wireless*, 396 F.3d at 933.  Indeed, the

case has been delayed by appeal once before and litigated for several years thereafter.

Even if Plaintiffs recovered more after a trial and appeal than in this Settlement, it is

questionable whether any additional sum would be more valuable than an immediate

payment of $16.5 million.  Because the Settlement Agreement will yield a certain,

substantial, and prompt recovery, without further delay and expense, Settlement will

benefit the Parties, and should be approved.

### 4.      Class Members' Positive Reaction Supports Final Approval

The Court has an obligation as a fiduciary to the class to consider the objections of

class members carefully.  *In re Wireless*, 396 F.3d at 922.  When objection to a settlement

is "miniscule," the Eighth Circuit has interpreted that response as evidence that the settlement warrants final approval.  *Id.*; *see also Petrovic*, 200 F.3d at 1152 (approving settlement where fewer than 4% of the class objected).

Here, of the thousands of potential Class members, only *two* Class members have timely opted out of the Settlement as of January 16, 2009, and no Class members submitted a timely objection.  (Botzet Decl., ¶ 9).  This is particularly significant in light of the success of the Notice Program, which is estimated to have reached 80.2% of the target demographic of the Class, at an estimated frequency of 2.0 times.  (*See* Kinsella Decl., ¶ 27.a).

The lack of objections and requests to opt out of the Settlement indicate the correspondingly positive response to the Settlement here and support its approval.  *In re Wireless*, 396 F.3d at 922.

### C.   The Plan Of Allocation Is Fair, Reasonable, And Adequate

#### 1.   Applicable Standard

A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel."  *In re Charter Comm*, 2005 WL 4045741, at *10 (citation omitted).  Here, the Settlement provides for a cash payment of $16.5 million which has been deposited into the Settlement Fund.  (Sobol Decl., ¶ 22.) The Agreement provides that the Settlement Fund will fund the payment of valid claims of Settlement Class members, costs of notice, claims administration, payment for service/incentive awards to the Named Plaintiffs and attorneys' fees and costs.  (*See* Settlement Agreement, § V).  The 30% of out-of-pocket expenses that Class

Members are entitled to claim was well-reasoned and based on Plaintiffs' research of sales data for similar non-FDA approved hormone replacement therapy drugs (Sobol Decl., ¶ 24).

Additionally, any and all monies remaining in the Settlement Fund after distributions to Class Members shall, according to the Settlement Agreement, be distributed *cy pres* to appropriate charitable or nonprofit organizations or foundations to be agreed upon by the Parties, subject to Court approval. (*Id.*, ¶ 23) *Cy pres* funds have traditionally been used to implement testamentary intent when it would otherwise fail. *In re Airline Ticket Com'n Antitrust Litig.*, 682 F.3d 679, 682 (8th Cir. 2002). "In the class action context, it may be appropriate for the court to use *cy pres* principles to distribute unclaimed funds." *Id.* In this context, "the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of the class members, and the interests of those similarly situated." *Id.*

The Parties, with approval of the Court, will designate such recipients. As indicated, Settlement Class Counsel has tentatively identified a significant number of worthy charitable or nonprofit organizations for the cy pres, including organizations and research universities dedicated to menopause and related women's health issues. Settlement Class Counsel will seek this Court's approval of the cy pres distribution after the other distributions are complete. This is a rational plan of allocation to benefit Class Members, both directly where possible, and indirectly otherwise.

### D.      The Settlement Class Should Be Certified

#### 1.      The Proposed Settlement Class Mirrors The Type Of Settlement Authorized By The United States Supreme Court

The United States Supreme Court's opinion in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997), confirmed the propriety, and recognized the necessity, of settlement class certification in cases involving identifiable and easily identified class members, and relatively small, essentially identical, and objectively calculable economic damages.  Noting that Federal Rule of Civil Procedure 23(b)(3) aims primarily at vindicating "the rights of groups of people who individually would be without effective strength to bring their opponent into court at all," the Supreme Court declared cases like this one to be the paradigm for class treatment:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  The class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (internal quotes and cites omitted).

The present action—involving one product, a single alleged course of conduct common to all Settlement Class Members, and economic (rather than personal injury) damages—is precisely the type of "core" class action endorsed in *Amchem*.  Without this class action (and without this Settlement), most Settlement Class Members would be "without effective strength to bring their arguments into court at all."  *Amchem*, 521 U.S. at 617.  Unlike the class disapproved in *Amchem*, which presented individualized

personal injury issues and future-injury classes, the proposed Settlement Class here seeks

only economic damages. Under these circumstances, certification of the Settlement

Class is proper.

2. **The Criteria For Certification Of The Settlement Class Under Rule 23 Are Satisfied**

In the Eighth Circuit, when "determining the propriety of a class action, the

question is not whether the plaintiff or plaintiffs have stated a cause of action or will

prevail on the merits, but whether the requirements of Rule 23 are met." *Beckmann v.*

*CBS, Inc.*, 192 F.R.D. 608, 613 (D. Minn. 2000). The substantive allegations in the

complaint are accepted as true for purposes of class certification. *See Lockwood Motors,*

*Inc. v. General Motors, Inc.*, 162 F.R.D. 569, 573 (D. Minn. 1995) (citing *Eisen*,

417 U.S. at 178). Accordingly, "the court must look only so far to determine whether,

given the factual setting of the case, if the plaintiff's general allegations are true, common

evidence could suffice to make out a prima facie case for the class" *Blades v. Monsanto,*

400 F.3d 562, 566 (8th Cir. 2005). Importantly, "[w]hen there is a question as to whether

certification is appropriate, the Court should give the benefit of the doubt to approving

the class." *In re Workers' Comp.*, 130 F.R.D. 99, 103 (D. Minn. 1990).

Against this backdrop, Rule 23 requires a two-step analysis to determine whether a

settlement class is appropriate. *See In re Retek, Inc. Sec. Lit.*, 236 F.R.D. 431, 434-37 (D.

Minn. 2006). First, plaintiffs must satisfy the four prerequisites of Rule 23(a):

(i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy. Fed. R. Civ. P. 23(a).

Second, under Rule 23(b)(3), plaintiffs must demonstrate that the common questions of

law or fact predominate over any individual questions and that a class action is superior to other alternative methods.  Fed. Civ. P. 23(b)(3).  This action readily meets the requirements for class certification under Rules 23(a) and 23(b)(3).

### a.  The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable

The numerosity requirement is met when "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In determining numerosity, courts consider factors bearing on the impracticability of joinder of all class members, such as judicial economy concerns, geographic dispersion of the proposed class, and the ability of class members to bring suit on an individual basis.  *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 560-61 (8th Cir. 1982).  In addition, "it is not necessary for the class representatives to either identify each particular member of the class or the exact number of class members; instead the trial court may reasonably infer that numerosity is satisfied from the facts of the case."  *Sondel v. Northwest Airlines, Inc.*, No. 3-92-381, 1993 WL 559031, at *6 (D. Minn. Sept. 30, 1993).

Based on sales data, Plaintiffs' counsel estimates that tens – if not hundreds – of thousands of women nationally purchased Estratest during the Settlement Class Period.  Given the large number of potentially affected individuals, the numerosity requirement is easily satisfied here.  1 *Newberg* § 3.5 ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

b.       **There Are Numerous Common Issues Of Law And Fact**

Rule 23(a)(2) requires that there be questions of law or fact common to the class. This is generally considered a low hurdle that is easily surmounted. *Lockwood Motors*, 162 F.R.D. at 575. Indeed, factual variances among class members will not defeat class certification if the claims arise from a common nucleus of facts. *See In re Select Comfort Corp. Sec. Lit.*, 202 F.R.D. 598, 603 (D. Minn. 2001); *see also Coley v. Clinton*, 635 17.2d 1364, 1378 (8th Cir. 1980). "The Eighth Circuit has consistently held that the commonality requirement is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation even though the individuals may not be identically situated." *In re Select Comfort Securities Litig.*, 202 F.R.D. 598, 603 (D.Minn. 2001) (citing *DeBoer*, 64 F.3d at 1174).

Here, in the absence of class certification and settlement, each Settlement Class Member would be required to litigate a long list of common issues of law and fact. The issues presented here are common to the Settlement Class and subject to generalized proof because they focus on Solvay's conduct in marketing Estratest, including: whether Solvay, through its distributors, agents, promotional literature, marketing campaign, PDR listing and other conduct, misrepresented or caused confusion regarding Estratest's regulatory status, and whether such misrepresentations and omissions were false, misleading or likely to deceive.

Because Plaintiffs have identified numerous questions of law and fact common to all members of the Settlement Class, Rule 23(a)(2)'s commonality requirement is fully satisfied.

### c.     <u>The Named Plaintiffs' Claims Are Typical</u>

Rule 23(a)(3) requires that the claims asserted by the proposed class representative be typical of the claims of each member of the class. Fed. R. Civ. P. 23(a)(3). The critical question is whether "there are other members of the class who have the same or similar grievances as the plaintiff." *Retek*, 236 F.R.D. at 435 (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United*, 84 F.3d 1525, 1540 (8th Cir. 1996). Accordingly, the burden of demonstrating typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Retek*, 236 F.R.D. at 435 (quoting *DeBoer*, 64 F.3d at 1174).

Typicality is met here because the Named Plaintiffs and proposed Settlement Class Members all claim to have been subjected to the same business practices of Solvay. Supported by identical legal theories, Plaintiffs and all Settlement Class Members share claims based on the same alleged course of conduct—Solvay's alleged misrepresentation of the regulatory status of Estratest. Plaintiffs and all Settlement Class Members allege that they were injured in the same manner by having to pay a premium for a drug that Plaintiffs allege was deceptively marketed. Thus, the Named Plaintiffs have asserted claims which are typical of the Settlement Class—in that each: (1) purchased Estratest; (2) alleges that Solvay misrepresented the regulatory status of Estratest; and (3) alleges injury as the result paying a premium for a drug that was deceptively marketed. The

same is true of the entire proposed Settlement Class.

> **d.     The Named Plaintiffs And Their Counsel Adequately Represent The Proposed Settlement Class**

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." To do so, they must satisfy two factors: (a) the class representatives' interests must not be antagonistic to those of the class; (b) the class representatives' attorney must be qualified, experienced, and generally able to conduct litigation. *See Workers' Comp.,* 130 F.R.D. at 107; *see also Retek*, 236 F.R.D. at 435; *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004) ("[o]therwise stated, adequate representation turns upon the qualifications and experience of plaintiffs' counsel to conduct the litigation and whether the plaintiffs have any interests antagonistic to the class") (citation omitted). The burden is on the defendant to demonstrate that the representatives are inadequate. *See Weme v. Freeway Ford, Inc.,* No. EM 02-009737, 2003 WL 23741867, at *6 (Minn. Dist. Ct. April 11, 2003). Both prongs of the adequacy test are readily satisfied here.

The Named Plaintiffs' claims are completely coextensive with those of the Settlement Class. Plaintiffs and each Settlement Class Member have an identical interest in establishing Solvay's liability. Plaintiffs and each Settlement Class Member allege to have been injured in the same manner by Solvay. Plaintiffs assert the same legal claims and theories as those of all Settlement Class Members. Plaintiffs seek the identical relief that would be sought by all Settlement Class Members. There is no conflict between Plaintiffs' claims and those of the proposed Settlement Class.

Each Named Plaintiff has agreed to assume the responsibility of representing the Settlement Class, and indeed have been excellent and committed representatives. They retained competent counsel. They each have: participated in numerous, lengthy interviews by Plaintiffs' counsel; assisted in responding to multiple discovery requests, have been deposed by Solvay, and provided extremely sensitive and personal medical information regarding their use of a hormone replacement therapy drug and the symptoms surrounding their menopausal conditions. (Sobol Decl., ¶¶ 35-36.) In sum, the Named Plaintiffs have diligently pursued this action in cooperation with Plaintiffs' counsel and have taken seriously their obligations to the Settlement Class.

With respect to the adequacy of Settlement Class Counsel, as set forth in the declarations filed herewith of Daniel E. Gustafson and Michael W. Sobol, and the firm resumes of Gustafson Gluek PLLC and Lieff, Cabraser, Heimann & Bernstein, LLP, Settlement Class Counsel have extensive experience and expertise in prosecuting complex class actions, including consumer actions. In pursuing this litigation vigorously for more than five years, Plaintiffs' counsel have advanced  and fully protected the common interests of all members of the Settlement Class – and will continue to do so. Accordingly, Rule 23(a)(4) is satisfied.

### E. The Proposed Settlement Class Meets The Predominance And Superiority Requirements Of Rule 23(B)(3)

The proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because, particularly in the context of this Settlement, questions common to the Settlement Class Members predominate over questions affecting only individual

Settlement Class Members, and the class action device provides the best method for the fair and efficient resolution of the Settlement Class's claims.

### 1.     Common Questions Predominate

A class action is appropriate under Rule 23(b)(3)  if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . ."  Fed. R. Civ. P. 23(b)(3) .  To establish predominance, Plaintiffs need merely show that a common course of conduct predominates over individual questions, even if some individual issues remain.  *Select Comfort*, 202 F.R.D. at 610.  "As with the commonality and typicality requirements, the predominance inquiry is directed towards the issue of liability.  'When determining whether common questions predominate, courts "focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions."'  *Id.* (citations omitted).  Indeed, "[c]ourts frequently grant class certification despite individual differences in class members' damages."  *Retek*, 236 F.R.D. at 436.

Here, the predominance requirement is satisfied because proof at trial would center on Solvay's alleged uniform deceptive practices to market Estratest as "FDA-approved" (when Plaintiffs claim it never had such approval).  These common factual and legal issues include:  (1) whether Solvay represented that Estratest was "FDA-approved" by marketing it in the PDR, by listing it in managed care organization formularies which were limited to "FDA-approved" drugs, or by representing that it had "approved," "off-label," or "indicated uses;" (2) whether Solvay's representations were false; and (3) whether the Settlement Class is entitled to damages, disgorgement of profits and

injunctive relief under Minn. Stat. § 325D.13 (Unlawful Trade Practices), Minn. Stat.

§ 325D.44 (Deceptive Trade Practices), Minn. Stat. § 325F.67 (False Statement in

Advertising), Minn. Stat. § 325F.69 (Consumer Fraud Act) and/or other states' consumer

fraud statutes.  These questions clearly predominate over any individual question that

might affect any single Settlement Class Member.

## VII.   <u>CONCLUSION</u>

For all of the foregoing reasons, the Settlement is fair, adequate, and reasonable.

Where, as here, a class settlement has been reached after meaningful discovery and

arm's-length bargaining, conducted by capable counsel, and the proponents of the

settlement are counsel experienced in similar litigation, the settlement should be entitled

to a presumption of fairness.  4 *Newberg* § 11.41; *Manual for Complex Litig., Second*,

§ 30.41.  These factors, and the terms of the Settlement (offering damage awards to all

eligible Class members), demonstrate that the Settlement is fair, adequate, and

reasonable.  Plaintiffs respectfully request this Court grant final approval of the

Settlement.

Dated:  January 29, 2010          Respectfully submitted,

GUSTAFSON GLUEK PLLC

By:  /s/ Daniel E. Gustafson

Daniel E. Gustafson (#202241)
Karla M. Gluek (#238399)
Brian L. Williams (#23249X)
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone:  (612) 333-8844
Facsimile:  (612) 339-6622

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Richard M. Heimann (*pro hac vice*)
Michael W. Sobol (*pro hac vice*)
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Elizabeth A. Alexander (pro hac vice)
One Nashville Place
150 Fourth Avenue, N., Suite 1650
Nashville, TN 37219-2423
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

*Attorneys for Plaintiffs and the Proposed Settlement Class*

## SERVICE LIST

David E. Stanley
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071

Russell J. Rogers, of Counsel
THOMPSON HINE, LLP
One Atlantic Center
1201 West Peachtree Street, Suite 2200
Atlanta, Georgia 30309

James D. Robenalt
Brian A. Troyer
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

853896.3