# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| JUDITH YARRINGTON, ELIZABETH CRAGAN, JULIA CRAIGHEAD and CAROLYN GREEN, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOLVAY PHARMACEUTICALS, INC.,<br><br>Defendant. | : : : : : : : : : : : : | **No. 09-CV-2261 (RHK/RLE)**<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

## I.   <u>INTRODUCTION</u>

Named Plaintiffs, Judith Yarrington, Elizabeth Cragan, Julia Craighead, and

Carolyn Green, individually, and on behalf of all others similarly situated ("Plaintiffs"),

have moved pursuant to Federal Rule of Civil Procedure 23(e), for an order granting final

approval of class action settlement and final certification of settlement class.

On September 18, 2009, this Court granted preliminary approval of the settlement

("Settlement") and provisionally certified the Settlement Class.  (Docket No. 14.)

Pursuant to the Court's Preliminary Approval Order, and February 12, 2010 Order

approving a Supplemental Notice Plan (Docket No. 57), notice was disseminated to the

Settlement Class.

One objection has been filed, but since that objection only objects to the award of

attorneys' fees and costs, that objection will be addressed in a separate order.

On March 16, 2010, the Court held a hearing regarding the motion for final

approval of the Settlement.  The Court has reviewed the pleadings offered in support of

the Settlement submitted by Plaintiffs.  After consideration thereof, the Court finds that

the Settlement satisfies and exceeds the final approval criteria that a settlement be "fair,

reasonable, and adequate" under Fed. R. Civ. P. 23(e), and therefore, Plaintiffs' Motion

for Final Approval of the Settlement is hereby GRANTED, as set forth herein.

## II.   <u>BACKGROUND</u>

### A.   <u>Litigation History</u>

This case has been pending since March 30, 2004.  The case was originally

brought against Solvay Pharmaceuticals, Inc. ("Solvay") and its parent, Solvay America

(collectively "Defendants") by Plaintiff Judith Yarrington ("Yarrington"), on behalf of herself and all others similarly situated, who purchased and ingested Estratest and Estratest H.S. (collectively "Estratest"), hormone replacement therapy drugs sold by Solvay, after March 8, 1998.  Yarrington commenced her class action in the District Court for the First Judicial District, Dakota County, Minnesota, alleging that Solvay falsely and deceptively advertised Estratest as an "FDA-approved" drug.  Yarrington asserted claims against Defendants for:  (1) violations of the Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*; (2) violations of the Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*; (3) violations of the Unlawful Trade Practices Act, Minn. Stat. § 325D.09, *et seq.*; (4) violations of the False Statement in Advertising Act, Minn. Stat. § 325F.67; (5) negligence; (6) breach of express and implied warranties; (7) fraud; and (8) misrepresentation.  Defendants denied liability and raised numerous defenses.

Defendants removed Yarrington's complaint to the United States District Court for the District of Minnesota, only to have the matter remanded to the Dakota County District Court on February 24, 2005.  (Sobol Decl., ¶ 8.)

Defendants filed a Motion to Dismiss all claims on grounds that the state district court did not have personal jurisdiction over Solvay America; that Yarrington failed to state a claim and failed to plead with the required particularity; Yarrington failed to give notice of a breach of warranty; and on grounds that the FDA had primary jurisdiction over the drug's approval process.  (Sobol Decl., ¶ 9.)  The state district court granted Defendants' motion in its entirety and dismissed Yarrington's action on September 25, 2005.  Yarrington appealed.  (*Id.*)  On September 26, 2006, the Minnesota Court of

Appeals reversed the dismissal of the statutory claims, and remanded the motion to dismiss Solvay America for lack of personal jurisdiction, ordering that Yarrington be permitted to conduct discovery as to the issue of personal jurisdiction over Solvay America.  (*Id.*)

Yarrington moved for class certification and to amend her complaint to add the other Named Plaintiffs, to revise the class definition (to strike the qualifier "and ingested"), and to revise certain facts pled in the initial complaint regarding the time frame of Defendants' conduct.  Defendants moved to strike Yarrington's Motion for Class Certification or, in the alternative, to conduct discovery in conjunction with certain putative class member declarations submitted in support of the motion.  (Sobol Decl., ¶ 11.)  Solvay America moved for summary judgment for lack of personal jurisdiction. (*Id.*)

Yarrington and Defendants subsequently reached a stipulation regarding certain issues.  (Sobol Decl., ¶ 12.)  Specifically, it was agreed that Yarrington could amend her complaint to add three Named Plaintiffs (Elizabeth Cragan, Judith Craighead, and Carolyn Green), but could not alter the proposed class definition to exclude the words "and ingested."  (*Id.*)  In other words, third-party payors were excluded from the operative class definition and were not part of the proposed class.  (*Id.*)

The court denied Yarrington's motion to amend, ruling that such amendment would expand the proposed class period beyond that originally alleged.  (Sobol Decl., ¶ 13.)  Accordingly, the temporal scope of the allegedly deceptive marketing was limited to

claims between March 8, 1998 and the end of 2004.  (*Id.*)   The state district court also dismissed Solvay America for lack of personal jurisdiction.  *Id.*

On April 24, 2009, Plaintiffs filed a revised motion for class certification.  Solvay filed its opposition on June 1, 2009.  In the course of briefing the class certification issue, the Parties moved closer to the Settlement. The class certification hearing date was continued at the Parties' request.  Plaintiffs ultimately did not file a reply memorandum. (Sobol Decl., ¶ 14.)  After numerous mediation sessions and meetings of counsel for the Parties, a Settlement Agreement was executed on August 25, 2009.  After preliminary approval of the Settlement was granted on September 18, 2009, the approved notice plan was implemented.

The initial deadline for objections and exclusions passed on January 2, 2010.  No timely objections to the Settlement were made[1] and only two Settlement Class Members sought exclusion from the Settlement.

A fairness hearing was scheduled for February 10, 2010.  On February 9, 2010, the Court issued an Order (Docket No. 51) identifying a procedural error regarding the previously-approved and implemented Notice.  The Court thus continued the fairness hearing until March 16, 2010.  On February 12, 2010, Plaintiffs moved for approval of a Modified Notice and Supplemental Notice Plan.  That motion was granted and the

---

[1] One untimely objection was filed by Lee M. Sweeney on January 6, 2010 (Docket No. 28), and was subsequently withdrawn on January 14, 2010 (Docket No. 30).  The objection was re-filed on February 4, 2010 (Docket No. 43), but was limited to attorneys' fees and costs.  The Court will address that objection in its order on attorneys' fees and expenses.

Supplemental Notice Plan has since been implemented.  No other objections were received prior to the March 8, 2010 revised objection deadline.  As of March 6, 2010, 1,294 valid claim forms were submitted by Settlement Class Members.  The stated (but not yet verified) total of these claims is $3,325,484.

As determined by the Court in granting preliminary approval of the Settlement, the terms of the proposed Settlement are fair, reasonable, and adequate as to the Settlement Class Members and made in good faith after more than five years of hard-fought, highly contested litigation, and extensive arms-length negotiations, including several mediation sessions.  The motion for final approval of the Settlement is made on the basis of a well-informed assessment of the strengths and weaknesses of the Parties' positions, and the Court hereby grants final approval of the Settlement.

## III.   <u>SUMMARY OF KEY SETTLEMENT TERMS</u>

The Settlement Agreement and Release ("Settlement Agreement") will resolve all of the claims of Plaintiffs and the Settlement Class.  Set forth below is a summary of the key terms of the Settlement Agreement.  A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Daniel E. Gustafson in Support of Motion for Preliminary Approval of the Settlement ("Preliminary Approval Gustafson Decl."), Docket No. 10.)

### A.   <u>Settlement Class</u>

The Settlement Class is defined as: all natural persons who purchased Estratest and/or Estratest H.S. in any state of the United States of America other than the State of California from March 8, 1998 until the date notice is first disseminated pursuant to the

Notice Plan.  The Settlement Class excludes: (i) all persons who timely and validly request exclusion from the Settlement Class; (ii) Solvay's officers, directors, and employees; (iii) Solvay's attorneys; (iv) Plaintiffs' attorneys; (v) Judge Timothy J. McManus and the members of his staff and immediate family; and (vi) Judges Richard H. Kyle and Raymond L. Erickson, and the members of their staff and immediate family.

### B.    The Benefits Of The Settlement

The principal terms of the Settlement include a cash payment of $16.5 million (the "Settlement Fund").  Settlement Class Members who submit a valid and timely Claim Form will receive a cash payment.  (Settlement Agreement, § V.B.)  The maximum allowable recovery for each Settlement Class Member submitting a valid Claim Form will be thirty percent (30%) of the total amount that each claimant states that they have paid out-of-pocket for Estratest during the Class Period.  The maximum recovery recognizes that only a part of a Settlement Class Member's purchase price constituted an overcharge resulting from Solvay's alleged misrepresentation.  This maximum percentage was calculated by Settlement Class Counsel based on their research of sales data regarding similar hormone replacement therapy drugs that were not "FDA-approved."   To the extent that aggregate claims are in excess of the Settlement Fund, claimants shall be paid *pro rata* such that the cash payment to each claimant shall be reduced by the same percentage.

In addition to funding claims of Settlement Class members, the Settlement Fund shall provide for the costs of notice, claims administration, service/incentive awards to the Named Plaintiffs and attorneys' fees and costs.  (*See* Settlement Agreement, § V.)

The $16.5 million common fund is without any reversion to Solvay.  Any and all monies remaining in the Settlement Fund after the distributions described above shall be promptly distributed *cy pres* to appropriate charitable or nonprofit organizations or foundations to be agreed upon by the Parties, subject to Court approval.  After further research and investigation of worthy recipients, Settlement Class Counsel will seek this Court's approval of the *cy pres* distribution after the other distributions are complete.

This is a rational plan of allocation that will benefit Settlement Class Members, both directly where possible, and indirectly otherwise.

Pursuant to the terms of the Settlement, a cash sum of $16.5 million was deposited into a secure investment account (the "Account") for the benefit of the Settlement Class. Until the Effective Date is reached, the Account will be jointly controlled by Solvay's counsel and Settlement Class Counsel and administered by Rust Consulting Group ("Rust Consulting"), who has previously been appointed Settlement Administrator.

The proposed Settlement provides a resolution of all claims brought against Solvay by Plaintiffs in the action.  (*See* Settlement Agreement, § IX.) Upon final approval of the Settlement, Plaintiffs and Settlement Class Members will release Solvay from all claims, whether known or unknown, relating to any and all manner of non-personal injury claims or liabilities that have been or could have been asserted in this action regarding Solvay's marketing, advertising and sales of Estratest.  (Settlement Agreement, § IX.)

C.     **Settlement Administration**

All claims are to be submitted to Rust Consulting under the following declaration:

"I declare under penalty of perjury under the laws of the United States of America that the information provided in this Claim Form is true and correct to the best of my knowledge and belief."  (Settlement Agreement, § VII and Ex. A thereto.)  Rust Consulting has discretion to request additional information from Settlement Class Members regarding payment for prescriptions if there is any indication of fraud, and to request such supplemental submission be made under penalty of perjury.

IV.     **THE COURT-ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND HAS BEEN FULLY IMPLEMENTED.**

A.     **Notice Standards**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litig.*, § 21.312 (4th ed. 2004).  In order to protect the rights of absent class members, the best notice practicable must be provided to class members.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-175 (1974).  According to the *Manual for Complex Litig.*, the settlement notice should:

> define the class; describe clearly the options open to the class members and the deadlines for taking action; describe the essential terms of the proposed settlement; disclose any special benefits provided to the class representatives; provide information regarding attorneys' fees; indicate the time and place of the hearing to consider approval of the settlement,

and the method for objecting to or opting out of the
settlement; explain the procedures for allocating and
distributing settlement funds, and, if the settlement provides
different kinds of relief for different categories of class
members, clearly set out those variations; provide information
that will enable class members to calculate or at least estimate
their individual recoveries; and prominently display the
address and phone number of class counsel and the procedure
for making inquiries.

§ 21.312.

**B.   The Notice Program Has Been Fully Implemented And Meets
Applicable Standards.**[2]

The Settlement Class Notices satisfied all of criteria above.  Kinsella Media, LLC

designed a comprehensive program for providing notice to the Settlement Class which

was approved by the Court on September 18, 2009.  It was fully implemented in

accordance with the Court's Order.  The initial Notice Plan included:  (a) direct notice by

first-class mail to all individuals who request such notice; (b) broad notice through the

use of paid media including national newspaper supplements, national consumer

magazines, and Internet banner advertising; and (c) electronic notice through an

informational Internet website. As set forth in the Declaration of Katherine Kinsella, filed

in conjunction with Plaintiffs' Motion for Final Settlement Approval, notice of the

proposed settlement was mailed to Settlement Class Members upon request, has been

---

[2] Counsel for Solvay has certified that Solvay provided notice of the proposed Settlement
to the appropriate state and federal government officials pursuant to 28 U.S.C. § 1715.
The Court has given the appropriate state and federal government officials the requisite
90 day time period (pursuant to 28 U.S.C. § 1715) to comment or object to the proposed
Settlement before entering its Final Order and Judgment and no such objections or
comments have been received.

published in major publications, as well as included in various health and menopause-related websites.

Rust Consulting established and continues to maintain a website dedicated to this Settlement (www.estratestsettlement.com) to provide additional information to potential Settlement Class Members and to answer frequently asked questions.  (Botzet Decl., at ¶ 6.)  The Settlement Website provides generalized information, including:  (1) the full text of the Settlement Agreement; (2) a Long-Form Notice; (3) the Preliminary Approval Order; (4) the toll-free number and mailing address for the Settlement Administrator; (5) contact information for Settlement Class Counsel; (6) frequently asked questions; and (7) a printer-friendly version of the Claim Form.  (*Id.*)  The Settlement Website became operational on October 13, 2009, and has since been accessible 24 hours a day, 7 days a week.  (*Id.*)  As part of the Supplemental Notice Plan, on February 15, 2010, the Settlement Website content was updated to reflect: (1) the revised objection deadline of March 8, 2010; (2) the new Fairness Hearing date of March 16, 2010; and (3) that Settlement Class members could object to the Settlement in writing only and were not required to appear at the Fairness Hearing to have their written objections considered. (Supp. Botzet Decl., ¶ 6). Through March 6, 2010, there have been approximately 15,439 unique visitors to the website.  (*Id.*)  Notice and settlement information is also posted on the websites of Settlement Class Counsel.  (*See* http://www.LieffCabraser.com/hormone-drug.htm and http://www.gustafsongluek.com.)

Notice of the Settlement was initially published in national magazines, including *Better Homes & Gardens*, *Ladies' Home Journal*, and *Woman's Day* and in the

newspaper *American Profile* and the Sunday newspaper supplements, *Parade* and *USA Weekend*.  As a result of the comprehensive paid media program, an estimated 80.2% of the target demographic—menopause prescription/hormone replacement therapy users— were reached with an average estimated frequency of 2.0 times.  (Kinsella Decl., ¶ 27.a.)

To facilitate the Supplemental Notice Plan, banner advertisements were placed on all the websites for the publications used in the initial Notice Program advising Class Settlement Members of the changes and directing them to the Settlement Website to review the modified long notice.  (Supplemental Declaration of Leigh Anna Thomure at ¶ 5.)  Supplemental Publication Notice was also placed in three nationally distributed newspapers: *USA Today*, the *New York Times*, and the *Wall Street Journal*.  (*Id*. at ¶ 4.)

As the Court-approved Claims Administrator, Rust Consulting was responsible for providing direct mail notices, receiving requests for exclusions, general correspondence, Notice Package requests and completed Claim forms.  Rust Consulting established and continues to maintain an automated toll-free telephone number (1-877-435-4068), where potential Settlement Class members can obtain information about the Settlement.  (Botzet Decl., at ¶ 4.)  This toll-free help line is accessible 24 hours a day, 7 days a week, with live support provided Monday through Friday, 9:00 a.m. to 5:30 p.m., EST.  (*Id.* at ¶ 7.) On February 15, 2010, the toll-free telephone support line verbiage was updated to reflect: (1) the revised objection deadline of March 8, 2010; (2) the new Fairness Hearing date of March 16, 2010; and (3) that Settlement Class members could object to the Settlement in writing only and were not required to appear at the Fairness Hearing to have their written objections considered. (Supp. Botzet Decl., ¶ 7). Through March 6,

2010, there have been approximately 1,706 calls to the toll-free telephone support line. (*Id*.)

On February 16, 2010, updated Notice Packages reflecting (1) the revised objection deadline of March 8, 2010; (2) the new Fairness Hearing date of March 16, 2010; and (3) that Settlement Class Members could object to the Settlement in writing only and were not required to appear at the Fairness Hearing to have their written objections considered, were sent to all Settlement Class Members who had previously been mailed a Notice Package.  (Supp. Botzet Decl., ¶ 8).   The updated Notice Package has and will continue to be mailed on a rolling basis in response to requests from Settlement Class Members.  (*Id*.)  As of March 6, 2010, 951 total requests for a Notice Package have been received and mailed out.  (*Id*.).

As of March 6, 2010, Rust Consulting has received 1,294 valid claim forms. (Supp. Botzet Decl., ¶ 9).  The aggregate amount of those claims is $3,325,484.  (*Id*.)  Of the thousands of potential Settlement Class Members, only two (2) timely exclusion requests were made before the deadline and no objections were filed.  (Supp. Botzet Decl., at ¶ 10.)  The deadline to submit claims is March 17, 2010.

For all of these reasons, the Court finds that the requirements of Rule 23(e)(1) have been fully satisfied, and the best notice practicable has been provided to absent Settlement Class Members.

## V.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE.

"Minnesota courts recognize a 'strong public policy favoring the settlement of disputed claims without litigation.'"  *Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir.

2007) (citations omitted); *Liddell v. Board of Educ. of the City of St. Louis*, 126 F.3d 1049, 1056 (8th Cir. 1997); *Alexander v. National Football League*, No. 76-123, 1977 U.S. Dist. LEXIS 15685, *34 (D. Minn. Aug. 1, 1977).  "In the class action context in particular, 'there is an overriding public interest in favor of settlement. . . .  Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."  *In re Charter Comm'n, Inc. Sec. Litig.*, No. MDL 1506, 2005 WL 4045741, at * 4 (E.D. Mo. June 30, 2005) (citation omitted).  A "strong public policy favors agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (citation omitted).

Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length, costs, and risks of the litigation.  As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."); 4 *Newberg on Class Actions* ("*Newberg*") § 11.41 (4th ed. 2002) (citing cases).

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:  (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of notice of the settlement to all affected class

members; (3) a formal "fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  § 21.63 (4th ed. 2004).

First, in granting preliminary approval, this Court conducted a preliminary evaluation of the Settlement and determined it to be within the range of reasonableness, and also provisionally certified the Settlement Class.  The second step was the implementation of the notice program, which has been completed in accordance with the Court's Preliminary Approval Order and the Court's Order Granting Plaintiffs' Motion for Approval of Modified Notice, Supplemental Notice Plan, and Setting Final Approval Hearing (Docket No. 57).  The third step is the final approval of the Settlement and the fairness hearing—the issue now before the Court.  This procedure, used by courts in this Circuit and endorsed by class action commentator Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

The decision to approve a proposed settlement is committed to the Court's sound discretion.  *In re Xcel Energy, Inc., Sec. Deriv. & ERISA Litig.*, 364 F. Supp. 2d 1013, 1017 (D. Minn. 2005) ("*Xcel Energy II*"); *In re St. Paul Travelers Sec. Litig.*, No. 04-3801, 2006 U.S. Dist. LEXIS 23191 (D. Minn. Apr. 25, 2006); *DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988).  To be approved, a proposed class action settlement must be "fair, reasonable and adequate."  *Petrovic*, 200 F.3d  at 1148; *Van Horn*, 840 F.2d at 606; *Grunin v. Int'l*

*House of Pancakes, Inc.*, 513 F.2d 114, 123 (8th Cir. 1975). *See also*; Rule 23(e)(1)(C)

Advisory Committee Notes to 2003 Amendments ("Subdivision (e)(1)(C) states the

standard for approving a proposed settlement that would bind class members. The

settlement must be fair, reasonable, and adequate."). The district court acts as a fiduciary

in reviewing a proposed settlement, and must guard the rights of absent class members.

*Grunin*, 513 F.2d at 123.

The Eighth Circuit has recognized that a class action settlement is a private

contract negotiated between the parties. *In re: Wireless Tele. Fed. Cost Recovery Fees

Litig.*, 396 F.3d 922, 934 (8th Cir. 2005). Under Rule 23(e), the role of this court is to

"ensure that the agreement is not the product of fraud or collusion and that, taken as a

whole, it is fair, adequate, and reasonable to all concerned." *Id.*; *see also DeBoer*,

64 F.3d at 1176; *Van Horn*, 840 F.2d at 606. The Court has not substituted its "own

judgment as to optimal settlement terms for the judgment of the litigants and their

counsel." *Petrovic*, 200 F.3d at 1148.

Consistent with this principle, this Court gives significant consideration to the

judgment of experienced counsel who conducted arms-length negotiations. *See, e.g.*, *In

re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659,

667 (D. Minn. 1974) ("the recommendation of experienced counsel is entitled to great

weight."); *see also In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 424-25 (S.D. Tex.

1999) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Stewart v. Rubin*,

948 F. Supp. 1077, 1099 (D.D.C. 1996), *aff'd* 124 F.3d 1309 (D.C. Cir. 1997); *In re

Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993); *Fisher*

*Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985); *Wellman v.*

*Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980), *aff'd* 647 F.2d 163 (2d Cir. 1981);

*Galdi Sec. Corp. v. Propp*, 87 F.R.D. 6, 10 (S.D.N.Y. 1979).  The presumption in favor

of such settlements reflects courts' understandings that vigorous negotiations between

experienced counsel protect against collusion and advance the fairness concerns

underlying Rule 23(e).

Where, as here, the Settlement is the product of arm's-length negotiations

conducted by capable counsel with extensive experience in complex class action

litigation, the Court begins its analysis with a presumption that the Settlement is fair and

should be approved.  *See* 4 *Newberg* § 11.41.

Further, the Court shall evaluate four factors when considering whether the

settlement is fair and reasonable:  (1) the merits of the plaintiff's case weighed against the

terms of the settlement; (2) the defendant's financial condition; (3) the complexity and

expense of further litigation; and (4) the amount of opposition to the settlement.  *In re*

*Wireless.*, 396 F.3d at 932 (citations omitted); *see also Petrovic*, 200 F.3d at 1152; *Van*

*Horn*, 840 F.2d at 607.  Each is discussed below and establish that final approval of the

Settlement is appropriate.

## VI.   ALL OF THE RELEVANT FACTORS SUPPORT FINAL APPROVAL OF THE SETTLEMENT.

### A.   The Settlement Is Entitled To A Presumption Of Fairness.

#### 1.   The Settlement Is The Product Of Serious, Informed, Arm's-Length Negotiations After Protracted Investigation And Litigation.

As set forth in the declarations of counsel, in the more than five years of litigation, Plaintiffs have undertaken substantial investigation, fact-gathering, and formal discovery (including review of tens of thousands of pages of documents, retention and consultation of numerous experts, interviews with numerous consumers, multiple discovery requests, independent investigation of Defendants' representations and Estratest's regulatory status, and numerous depositions). Named Plaintiffs and each of their treating physicians have been deposed. Named Plaintiffs have each produced sensitive, personal, medical records. Moreover, the Parties engaged in extensive motion practice, including motions to dismiss and for summary judgment, an appeal, and Plaintiffs' motion for class certification, before reaching the Settlement Agreement.

#### 2.   The Parties Participated In Arm's-Length Negotiations Before Experienced Neutral Mediators.

As set forth in the declarations of counsel, settlement discussions in this case were protracted, with attempts to reach resolution spanning several years. The Parties engaged in two mediation sessions with the assistance of experienced mediators in December 2007 and February 2009, and engaged in informal settlement discussions for several months thereafter, both in person and by telephone. Settlement discussions that began in 2007 were not concluded until August 2009. It was not until after all material terms were

reached that the Parties discussed the amount of attorneys' fees and costs.  Attorneys on

both sides are very experienced in the prosecution, defense, trial and settlement of class

action litigation, including as it relates to consumer class actions, and are well-versed in

the legal and factual issues implicated in this action.

In light of these facts, the Court concludes that the Settlement was reached only

after extensive arm's-length negotiations, and there is no indication of collusion.  Further,

Settlement Class Counsel and counsel for Solvay, who are experienced in class action

litigation, acted in good faith, and represented their clients' best interests in reaching the

Settlement.  For these reasons, the Court finds that this Settlement is entitled to a

presumption of fairness.

**B.      Four Factors Weigh In Favor Of Settlement.**

**1.      The Likelihood of Success on the Merits Weighed  in Favor of
the Settlement.**

This Court must consider several other factors in determining whether to grant

final approval of the settlement, the "most important" of which is "the strength of the

case for the plaintiffs on the merits, balanced against the amount offered in settlement."

*See, e.g.*, *In re Wireless,* 369 F.3d at 933; *see also Petrovic*, 200 F.3d at 1150.  The Court

balances the uncertainty of relief against the immediate benefit provided in the

Settlement.  *Id.*, 396 F.3d at 933.  As one court noted in its discussion of this factor:  "the

risks surrounding a trial on the merits are always considerable."  *Weiss v. Mercedes-Benz*

*of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995).  As another court has noted, "no

matter how confident one may be of the outcome of litigation, such confidence is often

misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971)[3]  Considerations include complexity, expense, and likely duration of the litigation. *See, e.g.*, *In re Wireless,* 369 F.3d at 932; *Van Horn,* 840 F.2d at 607; *Ngwanyia v. Gonzales*, 376 F. Supp. 2d 923, 929 (D. Minn. 2005); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

The Court finds that counsel for the Settlement Class have exhaustively assessed the probability of ultimate success on the merits against the risks of establishing liability and damages and maintaining a class action through trial and appeal.  As extensively described in their declarations, Plaintiffs' counsel vigorously prosecuted this case and thoroughly investigated the claims asserted against Solvay.  (Sobol Decl., at ¶¶ 6-25.) Plaintiffs' counsel were in contact with over 100 putative class members; took depositions of Solvay's corporate representatives, defended depositions of each Named Plaintiff and their prescribing physician(s), reviewed thousands of pages of documents; propounded document requests, interrogatories, and requests for admissions; and responded to extensive discovery requests propounded by Solvay, including the production of personal, sensitive medical information.  (*See id.*)  In addition, the Parties litigated a motion to remand, a motion to dismiss (and the appeal thereof), a motion for

---

[3] Other decisions that demonstrate the enormous risks of litigation include:  *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd without op. sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) (dismissed after plaintiffs' presentation of case at trial); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (*en banc*) (after jury verdict in favor of plaintiffs and the class, reversing the district court's denial of judgment n.o.v. for defendants and remanding with instruction to dismiss the complaint); *Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558, 564-65 (3d Cir. 1989) (jury award of $2.3 million in punitive damages overturned).

summary judgment, a motion to strike evidence, and a motion to amend the complaint. (*Id.*)  At the time of settlement, Plaintiffs' counsel had prepared and filed a motion for class certification and all supporting papers and expert reports.  (*Id.*)  Plaintiffs' counsel had investigated market data regarding the sale of Estratest and similar drugs to determine the appropriate damages.  The Parties had also engaged in two formal mediation sessions, for which they prepared confidential mediation briefs.  (*Id.*)  In sum, counsel for all Parties completed substantial investigation and discovery and negotiated the proposed settlement with complete knowledge regarding the strengths and weaknesses of the case and the amounts necessary to reasonably compensate Settlement Class Members for the harm suffered.

There is little question in the Court's mind that absent the Settlement, this case (pending since 2004) would continue to generate vigorously disputed issues of law and fact.  Even if a class had been certified in the litigation, Solvay would likely have contested liability, causation, and damages at trial.  Based on substantial information available to them through extensive formal and informal discovery, Settlement Class Counsel rightfully concluded that the Settlement is well within the range of reasonableness in light of the best possible recovery and the attendant risks of litigation. *See In re Wireless*, 396 F.3d at 933 (quoting the district court as properly finding that, without settlement, the case would "'likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing.'")  Conversely, the Court also agrees that the Settlement provides Settlement Class Members with benefits they would not enjoy if the case were to proceed to trial.  The Settlement

provides Settlement Class Members with prompt and efficient relief.  Moreover, because the individual actions would be cost-prohibitive relative to the amount in controversy presented by any individual claim, the Settlement Class Members receive the benefit of being part of a class action.

The Court further finds that the monetary benefits are substantial.  The Settlement Agreement creates a non-reversionary Settlement Fund of approximately $16.5 million, plus interest, for unnamed Settlement Class Members.  Settlement Class Members who submit a valid Claim Form will be eligible to recoup a substantial percentage of what they paid out of pocket for Estratest based on research of pricing data for similar hormone replacement therapy drugs.  If the Settlement Fund is not adequate to cover these claims, the claimants will be paid *pro rata*, with a payment or payments to appropriate *cy pres* recipients if there is a surplus. Although the claims process is not yet complete, it appears that all claimants will be fully reimbursed for their alleged losses. The Court agrees with the Parties that the division of settlement proceeds that will be made with this allocation plan will be fair and reasonable.

In view of the risks of protracted litigation and the substantial, immediate benefit provided to Settlement Class Members through the Settlement, the Court finds that the Settlement merits final approval.

## 2.     The Defendant's Financial Condition

While the $16.5 settlement amount is substantial, Solvay is fully capable of funding the Settlement.  Indeed, the Settlement has been fully funded in advance of final

approval.  While Solvay, in theory, could pay more, the Court finds that "this fact, standing alone, does not render the settlement inadequate."  *Petrovic*, 200 F.3d at 1152.

### 3.      Complexity and Expense of Further Litigation

Here, Plaintiffs' counsel rightfully contends that there are substantial risks to proceeding with this litigation.  The Court agrees that the factual and legal issues in this action are complex, and the trial of Plaintiffs' claims under 49 states' laws would require substantial preparation and ultimately the presentation of dozens of witnesses and numerous experts.  Also contributing to the complexity are the regulatory status of Estratest before and after March 8, 2004, which Solvay hotly contests, the nature and extent of Solvay's alleged misrepresentations, the reliance of Named Plaintiffs and Settlement Class Members on Solvay's alleged misrepresentations, as well as damages allegedly sustained by the Settlement Class.  (Sobol Decl., ¶ 19)

This case has been pending since March of 2004, and the Parties have demonstrated a willingness to continue to contribute significant time and resources to the case.  Thus, the Court agrees that even if Plaintiffs were successful in obtaining certification and thereafter prevailing on the merits at trial, proceeding to trial could add years to the resolution of this case and could be further delayed by appeals, and "all the while the class members would receive nothing."  *In re Wireless*, 396 F.3d at 933. Indeed, as Plaintiffs point out, the case has been delayed by appeal once before and litigated for several years thereafter.  Even if Plaintiffs recovered more after a trial and appeal than in this Settlement, it is questionable whether any additional sum would be more valuable than an immediate payment of $16.5 million.  Because the Settlement

Agreement will yield a certain, substantial, and prompt recovery, without further delay and expense, the Court finds that Settlement will benefit the Parties and the legal system, and approval is appropriate.

> **4.** **Settlement Class Members' Positive Reaction Supports Final Approval.**

The Court has an obligation as a fiduciary to the Settlement Class to consider the objections of Settlement Class Members carefully. *In re Wireless*, 396 F.3d at 922. When objection to a settlement is "miniscule," the Eighth Circuit has interpreted that response as evidence that the settlement warrants final approval. *Id.*; *see also Petrovic*, 200 F.3d at 1152 (approving settlement where fewer than 4% of the class objected).

Here, of the thousands of potential Settlement Class members, only two Settlement Class members have opted out , and no Settlement Class Member submitted a timely objection. (Botzet Decl., ¶ 9). The only objection on record is to the award of attorneys' fees and costs. This is particularly significant in light of the success of the Notice Program, which is estimated to have reached 80.2% of the target demographic of the Settlement Class, at an estimated frequency of 2.0 times. (*See* Kinsella Decl., ¶ 27.a).

The Court finds that the lack of objections and requests to opt out reflect a positive response to the Settlement by Settlement Class Members and support its approval. *In re Wireless*, 396 F.3d at 922.

**C.** **The Plan Of Allocation Is Fair, Reasonable, And Adequate.**

**1.** **Applicable Standard**

A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re Charter Comm*, 2005 WL 4045741, at *10 (citation omitted). Here, the Settlement provides for a cash payment of $16.5 million which has been deposited into the Settlement Fund. The Agreement provides that the Settlement Fund will fund the payment of valid claims of Settlement Class members, costs of notice, claims administration, payment for service/incentive awards to the Named Plaintiffs and attorneys' fees and costs. (*See* Settlement Agreement, § V). The Court agrees that the 30% of out-of-pocket expenses that Settlement Class Members are entitled to claim was well-reasoned and based on Plaintiffs' research of sales data for similar non-FDA approved hormone replacement therapy drugs (Sobol Decl., ¶ 15).

Additionally, any and all monies remaining in the Settlement Fund after distributions to Class Members shall, according to the Settlement Agreement, be distributed *cy pres* to appropriate charitable or nonprofit organizations or foundations to be agreed upon by the Parties, subject to Court approval. *Cy pres* funds have traditionally been used to implement testamentary intent when it would otherwise fail. *In re Airline Ticket Com'n Antitrust Litig.*, 682 F.3d 679, 682 (8th Cir. 2002). "In the class action context, it may be appropriate for the court to use *cy pres* principles to distribute unclaimed funds." *Id.* In this context, "the unclaimed funds should be distributed for a

purpose as near as possible to the legitimate objectives underlying the lawsuit, the

interests of the class members, and the interests of those similarly situated." *Id.*

At the appropriate time,[4] the Parties, with approval of this Court, will designate

such recipients.  The Court agrees that this is a rational plan of allocation to benefit

Settlement Class Members, both directly where possible, and indirectly otherwise.

### D.     Settlement Class Certification Is Appropriate

#### 1.     The Proposed Settlement Class Mirrors The Type Of Settlement Authorized By The United States Supreme Court.

The United States Supreme Court's opinion in *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 620 (1997), confirmed the propriety, and recognized the necessity, of

settlement class certification in cases involving identifiable and easily identified class

members, and relatively small, essentially identical, and objectively calculable economic

damages.  Noting that Federal Rule of Civil Procedure 23(b)(3) aims primarily at

vindicating "the rights of groups of people who individually would be without effective

strength to bring their opponent into court at all," the Supreme Court declared cases like

this one to be the paradigm for class treatment:

> The policy at the very core of the class action mechanism is
> to overcome the problem that small recoveries do not provide
> the incentive for any individual to bring a solo action
> prosecuting his or her rights.  The class action solves this
> problem by aggregating the relatively paltry potential

---

[4] The Settlement Agreement provides that *cy pres* funds cannot be distributed until "one hundred and eighty (180) days has elapsed from: (1) the date on which settlement checks are mailed by the Settlement Administrator, or (2) the date upon which Settlement Class Counsel Fees and Costs (as defined below) are distributed, whichever is later." Settlement Agreement, § V, E.

> recoveries into something worth someone's (usually an
> attorney's) labor.

*Amchem*, 521 U.S. at 617 (internal quotes and cites omitted).

The Court finds that the present action—involving one product, a single alleged course of conduct common to all Settlement Class Members, and economic (rather than personal injury) damages—is precisely the type of "core" class action endorsed in *Amchem*. Without this class action (and without this Settlement), most Settlement Class Members would be "without effective strength to bring their arguments into court at all." *Amchem*, 521 U.S. at 617. Unlike the class disapproved in *Amchem*, which presented individualized personal injury issues and future-injury classes, the Settlement Class here seeks only economic damages. Under these circumstances, the Court finds that certification of the Settlement Class is proper.

**2.      The Criteria For Certification Of The Settlement Class Under Rule 23 Are Satisfied.**

In the Eighth Circuit, when "determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met." *Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 613 (D. Minn. 2000). The substantive allegations in the complaint are accepted as true for purposes of class certification. *See Lockwood Motors, Inc. v. General Motors, Inc.*, 162 F.R.D. 569, 573 (D. Minn. 1995) (citing *Eisen*, 417 U.S. at 178). Accordingly, "the court must look only so far to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class" *Blades v. Monsanto*,

400 F.3d 562, 566 (8th Cir. 2005). Importantly, "[w]hen there is a question as to whether certification is appropriate, the Court should give the benefit of the doubt to approving the class." *In re Workers' Comp.*, 130 F.R.D. 99, 103 (D. Minn. 1990).

Against this backdrop, Rule 23 requires a two-step analysis to determine whether a settlement class is appropriate. *See In re Retek, Inc. Sec. Lit.*, 236 F.R.D. 431, 434-37 (D. Minn. 2006). First, plaintiffs must satisfy the four prerequisites of Rule 23(a): (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy. Fed. R. Civ. P. 23(a). Second, under Rule 23(b)(3), plaintiffs must demonstrate that the common questions of law or fact predominate over any individual questions and that a class action is superior to other alternative methods. Fed. Civ. P. 23(b)(3). The Court finds that this action readily meets the requirements for class certification under Rules 23(a) and 23(b)(3).

    **a.**    <u>**The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.**</u>

The numerosity requirement is met when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In determining numerosity, courts consider factors bearing on the impracticability of joinder of all class members, such as judicial economy concerns, geographic dispersion of the proposed class, and the ability of class members to bring suit on an individual basis. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 560-61 (8th Cir. 1982). In addition, "it is not necessary for the class representatives to either identify each particular member of the class or the exact number of class members; instead the trial court may reasonably infer that numerosity is satisfied

from the facts of the case." *Sondel v. Northwest Airlines, Inc.*, No. 3-92-381, 1993 WL

559031, at *6 (D. Minn. Sept. 30, 1993).

Based on sales data, Plaintiffs' counsel estimates that tens – if not hundreds – of

thousands of women nationally purchased Estratest during the Settlement Class Period.

Given the large number of potentially affected individuals, the Court finds that the

numerosity requirement is easily satisfied here.  1 *Newberg* § 3.5 ("In light of prevailing

precedent, the difficulty inherent in joining as few as 40 class members should raise a

presumption that joinder is impracticable, and the plaintiff whose class is that large or

larger should meet the test of Rule 23(a)(1) on that fact alone.").

### b.      There Are Numerous Common Issues Of Law And Fact.

Rule 23(a)(2) requires that there be questions of law or fact common to the class.

This is generally considered a low hurdle that is easily surmounted.  *Lockwood Motors*,

162 F.R.D. at 575.  Indeed, factual variances among class members will not defeat class

certification if the claims arise from a common nucleus of facts.  *See In re Select Comfort

Corp. Securities. Lit.*, 202 F.R.D. 598, 603 (D. Minn. 2001); *see also Coley v. Clinton*,

635 17.2d 1364, 1378 (8th Cir. 1980).  "The Eighth Circuit has consistently held that the

commonality requirement is satisfied when the legal question linking the class members

is substantially related to the resolution of the litigation even though the individuals may

not be identically situated."  *In re Select Comfort*, 202 F.R.D. at 603.

Here, in the absence of class certification and settlement, each Settlement Class

Member would be required to litigate a long list of common issues of law and fact.  The

Court finds that the issues presented here are common to the Settlement Class and subject

to generalized proof because they focus on Solvay's conduct in marketing Estratest, including: whether Solvay, through its distributors, agents, promotional literature, marketing campaign, PDR listing and other conduct, misrepresented or caused confusion regarding Estratest's regulatory status, and whether such misrepresentations and omissions were false, misleading or likely to deceive.

The Court further finds that numerous questions of law and fact common to all members of the Settlement Class, and thus, Rule 23(a)(2)'s commonality requirement is fully satisfied.

### c.        The Named Plaintiffs' Claims Are Typical.

Rule 23(a)(3) requires that the claims asserted by the proposed class representative be typical of the claims of each member of the class.  Fed. R. Civ. P. 23(a)(3).  The critical question is whether "there are other members of the class who have the same or similar grievances as the plaintiff."  *Retek*, 236 F.R.D. at 435 (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)).  "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."  *Alpern v. UtiliCorp United*, 84 F.3d 1525, 1540 (8th Cir. 1996).  Accordingly, the burden of demonstrating typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff."  *Retek*, 236 F.R.D. at 435 (quoting *DeBoer*, 64 F.3d at 1174).

The Court finds that typicality is met here because the Named Plaintiffs and proposed Settlement Class Members all claim to have been subjected to the same

business practices of Solvay.  Supported by identical legal theories, Plaintiffs and all

Settlement Class Members share claims based on the same alleged course of conduct—

Solvay's alleged misrepresentation of the regulatory status of Estratest.  Plaintiffs and all

Settlement Class Members allege that they were injured in the same manner by having to

pay a premium for a drug that Plaintiffs allege was deceptively marketed.  Thus, the

Named Plaintiffs have asserted claims which are typical of the other Settlement Class

Members' claims—in that each:  (1) purchased Estratest; (2) alleges that Solvay

misrepresented the regulatory status of Estratest; and (3) alleges injury as the result

paying a premium for a drug that was deceptively marketed.  The same is true of the

entire proposed Settlement Class.

        **d.**      **The Named Plaintiffs And Their Counsel Adequately
                 Represent The Proposed Settlement Class.**

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect

the interests of the class."  To do so, they must satisfy two factors:  (a) the class

representatives' interests must not be antagonistic to those of the class; (b) the class

representatives' attorney must be qualified, experienced, and generally able to conduct

litigation.  *See Workers' Comp.,* 130 F.R.D. at 107; *see also Retek*, 236 F.R.D. at 435;

*Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004) ("[o]therwise stated,

adequate representation turns upon the qualifications and experience of plaintiffs' counsel

to conduct the litigation and whether the plaintiffs have any interests antagonistic to the

class") (citation omitted).  The burden is on the defendant to demonstrate that the

representatives are inadequate.  *See Weme v. Freeway Ford, Inc.,* No. EM 02-009737, 2003 WL 23741867, at *6 (Minn. Dist. Ct. April 11, 2003).

The Court finds that the Named Plaintiffs' claims here are completely coextensive with those of the Settlement Class.  Plaintiffs and each Settlement Class member have an identical interest in establishing Solvay's liability.  Plaintiffs and each Settlement Class Member allege to have been injured in the same manner by Solvay.  Plaintiffs assert the same legal claims and theories as those of all Settlement Class Members.  Plaintiffs seek the identical relief that would be sought by all Settlement Class Members.  Thus, the Court finds that there is no conflict between Plaintiffs' claims and those of the Settlement Class.

The Court also finds that the Named Plaintiffs have assumed the responsibility of representing the Settlement Class.  They retained competent counsel. They each have: participated in numerous, lengthy interviews by Plaintiffs' counsel; assisted in responding to multiple discovery requests, been deposed by Solvay, and provided extremely sensitive and personal medical information regarding their use of a hormone replacement therapy drug and the symptoms surrounding their menopausal conditions. (Sobol Decl., ¶ 35.)  In sum, the Court agrees Named Plaintiffs have diligently pursued this action in cooperation with Plaintiffs' counsel and have taken seriously their obligations to the Settlement Class.

With respect to the adequacy of Settlement Class Counsel, as set forth in the declarations filed herewith of Daniel E. Gustafson and Michael W. Sobol, and the firm resumes of Gustafson Gluek PLLC and Lieff, Cabraser, Heimann & Bernstein, LLP,

Settlement Class Counsel have extensive experience and expertise in prosecuting complex class actions, including consumer actions.  In pursuing this litigation vigorously for more than five years, Plaintiffs' counsel have advanced and fully protected the common interests of all members of the Settlement Class.  Accordingly, the Court finds that Rule 23(a)(4) is satisfied.

### E.   The Proposed Settlement Class Meets The Predominance And Superiority Requirements Of Rule 23(B)(3).

The Court finds that the proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because, particularly in the context of this Settlement, questions common to the Settlement Class Members predominate over questions affecting only individual Settlement Class Members, and the class action device provides the best method for the fair and efficient resolution of the Settlement Class's claims.

### 1.   Common Questions Predominate.

A class action is appropriate under Rule 23(b)(3)  if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . ."  Fed. R. Civ. P. 23(b)(3) .  To establish predominance, Plaintiffs need merely show that a common course of conduct predominates over individual questions, even if some individual issues remain.  *Select Comfort*, 202 F.R.D. at 610.  "As with the commonality and typicality requirements, the predominance inquiry is directed towards the issue of liability.  'When determining whether common questions predominate, courts "focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions."'  *Id.*

(citations omitted).  Indeed, "[c]ourts frequently grant class certification despite individual differences in class members' damages."  *Retek*, 236 F.R.D. at 436.

Here, the Court finds that the predominance requirement is satisfied because proof at trial would center on Solvay's alleged uniform deceptive practices to market Estratest as "FDA-approved" (when Plaintiffs claim it never had such approval).  These common factual and legal issues include:  (1) whether Solvay represented that Estratest was "FDA-approved" by marketing it in the PDR, by listing it in managed care organization formularies which were limited to "FDA-approved" drugs, or by representing that it had "approved," "off-label," or "indicated uses;" (2) whether Solvay's representations were false; and (3) whether the Settlement Class is entitled to damages, disgorgement of profits and injunctive relief under Minn. Stat. § 325D.13 (Unlawful Trade Practices), Minn. Stat. § 325D.44 (Deceptive Trade Practices), Minn. Stat. § 325F.67 (False Statement in Advertising), Minn. Stat. § 325F.69 (Consumer Fraud Act) and/or other states' consumer fraud statutes.  These questions clearly predominate over any individual question that might affect any single Settlement Class Member.

## VII.  <u>CONCLUSION</u>

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.    For all of the foregoing reasons, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court finds that the Settlement is fair, adequate, and reasonable.

2.    The Court hereby certifies, only for purposes of effectuating this Settlement, a Settlement Class consisting of individuals who purchased Estratest on or

after March 8, 1998 in any state of the United States of America other than the State of California.  Excluded from the Settlement Class are: (i) all persons who timely and validly request exclusion from the Settlement Class; (ii) Solvay's officers, directors, and employees, (iii) Solvay's attorneys; (iv) Plaintiffs' attorneys; (v) Judge Timothy J. McManus and the members of his staff and immediate family; and (vi) Judges Richard H, Kyle and Raymond L. Erickson and members of their staff and immediate families.

      3.    The Court finds that Settlement Class Counsel and Plaintiffs have fully and adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement and have satisfied the requirements of Fed. R. Civ. P. 23(a)(4).

      4.    The Court hereby appoints Judith Yarrington, Elizabeth Cragan, Julia Craighead, and Carolyn Green to serve as Settlement Class representatives.  The Court appoints Lieff Cabraser Heimann & Bernstein, LLP and Gustafson Gluek, PLLC to serve as Settlement Class Counsel.  The appointment of Settlement Class Counsel, and the appointment of the Plaintiffs as the Settlement Class representatives, is fully and finally confirmed.

      5.    The release language contained in the Settlement Agreement is expressly incorporated herein in all respects, is effective as of the date of this Final Order and Judgment, and forever discharges the Released Parties as set forth therein.

      6.    Nothing in this Final Order and Judgment shall preclude any action to enforce the terms of the Settlement Agreement; nor shall anything in this Final Order and Judgment preclude Plaintiffs or Class Members from participating in the Claims Program

described in the Settlement Agreement if they are entitled to do so under the terms of the Settlement Agreement.

7.      The Court has jurisdiction to enter this Final Order and Judgment.  Without in any way affecting the finality of this Final Order and Judgment, this Court expressly retains exclusive and continuing jurisdiction over the Parties, including the Settlement Class, and all matters relating to the administration, consummation, validity, enforcement and interpretation of the Settlement Agreement and of this Final Order and Judgment, including, without limitation, for the purpose of:

        a.      enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, and/or this Final Order and Judgment;

        b.      entering such additional orders, if any, as may be necessary or appropriate to protect or effectuate this Final Order and Judgment and the Settlement Agreement or to ensure the fair and orderly administration of the Settlement; and

        c.      entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction over the Settlement Agreement, the Parties, and the Class Members.

8.      Except as to any individual claim of any Class Members who have validly and timely requested exclusion from the Settlement Class, this action is dismissed to the extent it alleges Released Claims as defined in the Settlement Agreement.  This is a Final

Judgment disposing of all Released Claims and all parties asserting those Released

Claims.

 Final approval of the Settlement is hereby granted.

 IT IS SO ORDERED,

 Dated:  March 16, 2010

<div style="margin-left:40%">s/Richard H. Kyle     <br>  JUDGE RICHARD KYLE<br>  United States District Court Judge</div>