**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

JUDITH YARRINGTON, ELIZABETH
CRAGAN, JULIA CRAIGHEAD and
CAROLYN GREEN, individually, and on
behalf of all others similarly situated,

    Plaintiffs,

  v.

SOLVAY PHARMACEUTICALS, INC.,

    Defendant.

No. 09-CV-2261 (RHK/RLE)

**ORDER GRANTING
SETTLEMENT CLASS
COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND COSTS,
AND PAYMENT OF SERVICE
AWARDS TO THE NAMED
PLAINTIFFS**

This matter is before the Court on Settlement Class Counsel's Motion for

Attorneys' Fees and Costs, and Payment of Service Awards to the Named Plaintiffs. For

the reasons set forth below, the Motion will be granted.

I. **BACKGROUND**

 A. **Litigation Summary.**

  This case has been pending since March 30, 2004. It was originally brought

against Solvay Pharmaceuticals, Inc. ("Solvay") and its parent, Solvay America

(collectively "Defendants") by Plaintiff Judith Yarrington ("Yarrington"), on behalf of

herself and all others similarly situated, who purchased and ingested Estratest and

Estratest H.S. (collectively "Estratest") hormone-replacement therapy drugs sold by

Solvay after March 8, 1998. Yarrington commenced her class action in the District Court

for the First Judicial District, Dakota County, Minnesota. Alleging that Defendants

falsely and deceptively advertised Estratest as an "FDA-approved" drug, Yarrington

asserted claims against Defendants for:  (1) violations of the Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*; (2) violations of the Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*; (3) violations of the Unlawful Trade Practices Act, Minn. Stat. § 325D.09, *et seq.*; (4) violations of the False Statement in Advertising Act, Minn. Stat. § 325F.67; (5) negligence; (6) breach of express and implied warranties; (7) fraud; and (8) misrepresentation.  Defendants denied liability and raised numerous defenses.  At the time the Settlement was reached, all common-law claims had been dismissed and Plaintiffs' Motion for Class certification on the remaining claims was pending.

    **B.**    **Discovery.**

This case has been extensively litigated over the past five years.  During the course of litigation, the parties conducted thorough discovery, both formally and informally.  (Sobol Dec., ¶ 15.)

With respect to informal discovery, Plaintiffs' counsel (a/k/a "Settlement Class Counsel") conducted extensive investigation of the claims alleged prior to filing Yarrington's complaint.  In this regard, Plaintiffs' counsel interviewed potential Class Members, gathered advertisements and marketing material for Estratest, reviewed information about the drug on the internet and in the press, reviewed the drug's listing in the Physician's Desk Reference, and ascertained the regulatory status of the drug.  (Sobol Dec., ¶ 15.)  Plaintiffs' counsel continued to monitor the regulatory status of the drug and to investigate how it was being marketed and perceived by the medical community throughout the litigation.  (*Id.*)  Plaintiffs' counsel spoke with over 100 women who purchased Estratest.  (*Id.*)  Counsel for Plaintiffs also gathered sales data from IMS

Health that informed their analysis with respect to the potential damages. (*Id.*)

Plaintiffs served Solvay with two sets of Requests for Production of Documents, two sets of Interrogatories, and one set of Requests for Admissions. (Sobol Dec., ¶ 16.) Solvay produced more than 224,000 pages of documents to Plaintiffs. (*Id.*)

Plaintiffs took depositions of Solvay's corporate representatives, including Greg Tackoor, who testified regarding marketing and distribution of information regarding Estratest; Paul Harding, who testified with respect to issues surrounding personal jurisdiction over Solvay America; and Bruce McMillian and Susan Link, who testified regarding electronic data storage, email, and voicemail. (Sobol Dec., ¶ 16.)

Solvay served each Named Plaintiff with one set of Interrogatories, one set of Requests for Admissions, and two sets of Requests for Production of Documents. (Sobol Dec., ¶ 17.) In response to Solvay's discovery requests, Plaintiffs produced sensitive and private medical information. (*Id.*) In addition, Solvay served subpoenas on, or otherwise obtained documents from, Plaintiffs' physicians, pharmacies, and insurers. (*Id.*)

Solvay also took the depositions of each Named Plaintiff and her prescribing physician(s). (Sobol Dec., ¶ 18.) Solvay deposed Dr. Peter Rost, Plaintiffs' expert on the issue of pharmaceutical marketing, whose affidavit was attached in support of Plaintiffs' Motion for Class Certification. (*Id.*) Plaintiffs retained multiple other experts to analyze damages and to opine regarding Estratest's regulatory status, and those experts began preparing their reports.

C.      **Settlement Negotiations.**

The parties engaged in two formal but unsuccessful mediation sessions at the Judicial Arbitration and Mediation Service (JAMS) in Los Angeles, California.  (Sobol Dec., ¶ 20.)  The first session was facilitated by the Honorable Lourdes Baird (Ret.) in December 2007.  (*Id.*)  A second mediation session was held on February 19, 2009, facilitated by Justice John K. Trotter (Ret.). (*Id.*)  In anticipation of each mediation session, the parties submitted confidential mediation briefs that focused issues and clarified the relative strengths and weaknesses of their positions.  (*Id.*)  At the conclusion of the second mediation session, a settlement demand from Plaintiffs was pending and the parties agreed to continue a dialogue based on the progress made during the meeting. (*Id.*)

Counsel for Plaintiffs and Solvay stayed in communication with each other by telephone during the months following the second mediation session.  (Sobol Dec, ¶ 21.) On June 18, 2009, counsel for the parties participated in an in-person settlement meeting in Atlanta.  (*Id.*)  At that meeting, the parties came close to reaching a verbal agreement as to the monetary terms of the settlement, other than attorneys' fees and costs.  (*Id.*)  For several months thereafter, the parties negotiated the terms of the Settlement Agreement. It was not until after all material terms were reached that the parties discussed the amount of attorneys' fees and costs.  The Settlement Agreement was fully executed on August 25, 2009.  (*Id.*)

On September 18, 2009, the Court granted preliminary approval of the Settlement and conditionally certified the Settlement Class, consisting of "all natural persons who

purchased Estratest in any state of the United States of America other than the State of California between March 8, 1998 and the date notice is first disseminated pursuant to the Notice Plan." The initial notice plan has since been implemented in accordance with that Order. In compliance with the Preliminary Approval Order and Rule 23(h)(1) of the Federal Rules of Civil Procedure, notice of Settlement Class Counsel's fee request was included in the Settlement Notice. (Sobol Decl., ¶ 25.)

Pursuant to the initial notice plan, the deadline for objections and exclusions passed on January 2, 2010. No timely objections to the Settlement were made. One untimely objection was filed by Lee M. Sweeney ("Sweeney") on January 6, 2010 (Doc. No. 28). It was subsequently withdrawn on January 14, 2010 (Doc. No. 30). On February 4, 2010, over one month after the objection deadline, Sweeney filed an objection limited to the payment of attorneys' fees and costs. On February 9, 2010, Sweeney filed her Reply Memorandum in Opposition to Class Counsels' Fee Motion (Doc. No. 52).

No other objections have been filed regarding Settlement Class Counsel's request for attorneys' fees or any other issue related to the Settlement.

Only 2 settlement Class Members sought exclusion. (Supplemental Botzet Decl., ¶ 10.) As of March 6, 2010, 1,294 valid claims were submitted by Class Members. (*Id.*, ¶ 9.) The deadline to submit claims is March 17, 2010.

Plaintiffs and Settlement Class Counsel sought final approval of the Settlement, as well as an Order granting attorneys' fees, costs, and payment of service awards.

**D.      The Requested Fees and Costs Are Reasonable and Appropriate**

**1.      The Requested Attorneys' Fees Are Reasonable**

The Eighth Circuit has determined that "[a]n award of attorney fees is committed

to the sound discretion of the district court."  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140,

1157 (8th Cir. 1999).  Awarding attorney fees based on the percentage of the common

fund recovered is a routine calculation of fees.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.

16 (1984).  In the Eighth Circuit, "use of a percentage method of awarding attorney fees

in a common-fund case is not only approved, but also 'well established.'"  *In re Xcel*

*Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005)

(*citing Petrovic*, 200 F.3d at 1157).  Moreover, courts applying the percentage-of-the-

fund method will often verify the reasonableness of an attorney fee award by cross-

checking it against the lodestar method.  *Petrovic*, 200 F.3d at 1157 ("[T]he lodestar

approach is sometimes warranted to double check the result of the 'percentage of the

fund' method.").

The range of attorneys' fees is expressly provided for in the Settlement Agreement

and Solvay does not contest the award requested by Settlement Class Counsel.  (Sobol

Decl., ¶ 21.)  That Settlement Class Counsel would request an award of attorneys fees' in

this range was clearly disclosed to Settlement Class Members in the notice.  (Sobol Dec.,

¶ 25.)

**2.      The Requested Attorneys' Fees Are Reasonable Under the
        Percentage Method.**

In the Eighth Circuit, courts have routinely awarded attorney fees ranging from

25% to 36% of a common fund under the percentage-of-the-fund method.  *See In re Xcel*, 364 F. Supp. 2d at 998 (summarizing cases).  In this case, Settlement Class Counsel request $5,445,000 in attorneys' fees for work through final approval of the Settlement. The Court finds that this request is 33⅓% of the Settlement Fund, and is in line with the range of fees approved by the Eighth Circuit.  Settlement Class Counsel have outlined their time, effort, and hard work on this complex and hard-fought litigation resulting in significant benefits to the Settlement Class.  Thus, the Court finds that Settlement Class Counsel's requested fee award is reasonable under the percentage-of-the-fund method.

The Eighth Circuit has not laid out factors that a district court must consider when determining whether a percentage of the common fund is reasonable.  *See id.* at 992. Decisions from this Court have relied on factors set forth by other Circuits, including the Third and Fifth Circuits.  *See Carlson v. C.F. Robinson Worldwide, Inc.*, Civ. No. 02-3780, 2006 U.S. Dist. LEXIS 67108, at *20 (D. Minn. Sept. 18, 2006) (considering several factors of the Third Circuit's 10-factor test in finding that a fee award of 35.5% of the common fund was "reasonable and appropriate"); *In re Xcel*, 364 F. Supp. 2d at 993 (considering seven factors of the Fifth Circuit's 12-factor test established in *Johnson v. Ga. Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974)).

Many of the factors to be considered by the Court overlap.  *See In re Xcel*, 364 F. Supp. 2d at 993 (*citing Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993)).  Further, not all of the individual factors will apply in every case, affording the Court wide discretion in the weight to assign each factor.  *Id.*  In *Xcel*, the court considered seven factors that are applicable here: (1) the benefit conferred on the

class, (2) the risk to which plaintiffs' counsel was exposed, (3) the difficulty and novelty of the legal and factual issues of the case, (4) the skill of the lawyers, both plaintiffs' and defendants', (5) the time and labor involved, (6) the reaction of the class, and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases.  *Id.*  Each of these factors supports the Court's decision to award Settlement Class Counsel's requested fees.

**a.**    <u>**The Settlement is Substantially Beneficial to the Class**</u>

The Court recognizes that Settlement Class Counsel obtained a $16,500,000 cash settlement, providing a substantial benefit to the Class.  Indeed, although the claims process is not yet complete, it appears that Settlement Class Members who file timely and otherwise valid claims will receive *100%* of their claimed damages – a percentage almost unheard of in class-action litigation.

In negotiating the Settlement, Settlement Class Counsel assessed the probability of ultimate success on the merits against the risks of establishing liability and damages and maintaining a class action through trial and appeal.  (Sobol Decl., ¶ 22.)  Absent the Settlement, this case (pending since 2004) would continue to generate vigorously disputed issues of law and fact.  (*Id.*)  Even if a class had been certified, Solvay likely would have contested liability, causation, and damages at trial.  (*Id.*)  Additionally, the Settlement Class will receive settlement benefits faster than they would receive awards obtained after trial and a likely appeal.  (*Id.*)  By itself, the cash settlement is beneficial to the Class, but weighed against the inherent risks of trial, the Court finds that the $16,500,000 cash settlement provides a substantial and immediate benefit to the Class.

**b.      Class Counsel Undertook Significant Risk**

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees."  *In re Xcel*, 364 F. Supp. 2d at 994.

The procedural history of the case exemplifies the significant risk undertaken by counsel.  (Sobol Decl., ¶ 26.)  Solvay aggressively litigated this case at every step over five years.  (*Id.*)  Early in the case, Solvay successfully moved to dismiss the entirety of Plaintiffs' claims.  (*Id.*)  Later, it successfully negotiated a stipulation preventing the Class from expanding by adding third-party payors and defeated Plaintiffs' motion to amend the class definition.  (*Id.*)  Defendants also prevailed on their motion to dismiss Solvay America.  (*Id.*)  At each stage of the litigation, Settlement Class Counsel faced considerable obstacles to the advancement of the case, including certification of the Class, which motion was pending at the time Settlement was reached.  (*Id.*)  Given the numerous state laws that would likely be at issue, the Court recognizes that certifying a class would have presented some difficulties.  (*Id.*)  Even if Plaintiffs had obtained class certification, the trial of their claims under multiple state consumer laws would have required substantial preparation and involved the presentation of dozens of witnesses and numerous experts, with no assurance of a favorable outcome. (*Id.*)

In sum, the Court finds that the significant risk undertaken by Settlement Class Counsel supports the reasonableness of the 33⅓% attorneys' fee award.

**c.      The Factual and Legal Issues in this Action are Complex**

The Court recognizes that the factual and legal issues in this action are complex. Issues in dispute include the regulatory status of Estratest before and after March 8, 2004,

the nature and extent of Solvay's alleged misrepresentations, the reliance of the Named

Plaintiffs and Settlement Class on Solvay's alleged misrepresentations, and damages

allegedly sustained by the Settlement Class.  Moreover, the trial of claims under multiple

state consumer-protection laws would have heightened the complexity of the factual and

legal issues being presented.  (Sobol Decl., ¶ 7.)  This factor weighs in favor of the fees

requested by Settlement Class Counsel.

### d.    Counsel for All Parties are Skilled Practitioners in Complex Class Action Litigation

Settlement Class Counsel have extensive experience and expertise in prosecuting

complex class actions, including consumer actions.  (Gustafson Dec, ¶ 2; Sobol Dec., ¶

3.)  In pursuing this litigation vigorously for six years, Plaintiffs' counsel have advanced

and fully protected the common interests of all Members of the Settlement Class and

have successfully navigated the complex legal and factual issues presented.  Solvay's

attorneys consist of multiple well-respected and capable defense firms, and they

consistently challenged Plaintiffs throughout the litigation.  Counsel for all parties

exhibited a great deal of skill in advocating on behalf of their clients and in bringing this

case to a fair and reasonable resolution.  The Court thus finds that this factor supports

Settlement Class Counsel's request for fees.

### e.    Class Counsel Spent Considerable Time & Effort Litigating the Case

Since the inception of this litigation, Settlement Class Counsel have expended

over 5,453.5 hours to litigate and resolve this dispute. (Gustafson Decl., ¶ 7; Sobol Decl.,

¶ 29.)   Plaintiffs' counsel moved the case along expeditiously, and made every effort to

limit duplicative efforts and to minimize the use of judicial resources in the management

of the case.  (*Id*.)  Counsel exhibited diligence and efficiency throughout the litigation,

resulting in a favorable result for the Class.  The Court finds that the time and effort

expended by Settlement Class Counsel was reasonable and supports Settlement Class

Counsel's request for fees.

### f. No Class Member Timely Objected to the Requested Attorneys' Fees Award and the One Untimely Objection is Without Merit.

No Class Member timely objected to the Settlement or the fee award requested

by Settlement Class Counsel by the original January 2, 2010 date.  The Court's February

12, 2010 Order extended the objection deadline from January 2, 2010 to March 8, 2010.

As evidenced by the Court's receipt of her objections well *before* it approved the

Modified Notice and Supplemental Notice Plan (on February 12, 2010), Lee M. Sweeney

("Ms. Sweeney") is *not* among those Class Members who may have initially refrained

from filing an objection due to the ambiguity surrounding an objector's need to attend the

Fairness Hearing.  Thus, Ms. Sweeney was not deterred from filing her objections; she

simply missed the objection deadline[1]

---

[1] It appears to the Court that Ms. Sweeney is the mother of Francis E. Sweeney, Jr., an attorney who regularly represents objectors in class-action lawsuits.  (*See* Declaration of Brian L. Williams in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Settlement Class Counsel's Motion for Attorneys' Fees and Costs.)  In fact, Francis E. Sweeney, Jr. routinely represents objectors as co-counsel with Edward F. Siegel, counsel for Ms. Sweeney.  (*Id*.)  Neither Mr. Siegel, Ms. Sweeney, nor Francis E. Sweeney, Jr. disclosed their related associations to this Court.  Mr. Siegel is known to the Court as a frequent objector.  *See, e.g., In re UnitedHealth Group Inc. PSLRA Litig.*, 06-CV-1691; *In re Medtronic, Inc., Implantable Defibrillators Prods. Liab. Litig.*, 05-MDL-1726; and *In re St. Paul Travelers Sec. Litig. II*, 04-CV-4697.

For an objection to a settlement to be considered by the Court on the merits, it must be timely filed.  *See*, *e.g. In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 n.6 (D. Minn. 2009) (declining to consider untimely objection); *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, No. 99-MDL-1309, 2004 WL 2931352, at *12 (D. Minn. Dec. 16, 2004) (setting an objection deadline in preliminarily certifying a settlement class and noting "any untimely objection shall be barred").  The requirement of a timely filing has also been specifically recognized by numerous other federal courts.  *See*, *e.g.*, *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92, 2009 WL 3397238, at *15 n.179 (S.D.N.Y. Oct. 15, 2009) (declining to consider two letters challenging the proposed settlement submitted after objection period had concluded); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02-CV-5575, 2008 WL 2941219, at *2 (S.D.N.Y. July 30, 2008) ("Thus, as a general matter, objections received after the January 6, 2006 objection deadline specified in the Notice are untimely."); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 475 (S.D. Fla. 2002) ("Objectors also are barred from being heard due to their violation of the Court's objection filing deadline."); *Manners v. Am. Gen. Life Ins. Co.*, No. Civ. A. 3-98-0266, 1999 WL 33581944, at *22 (M.D. Tenn. Aug. 11, 1999) ("This objection, which received only passing reference (one sentence to be exact) in Mr. Jones' June 1, 1999 submission, is again untimely, and the Court overrules it for that reason."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 481 (S.D.N.Y. 1998) ("The few remaining objections are untimely or otherwise deficient.").

Even though Ms. Sweeney's failure to file a timely objection would be sufficient

to reject it out of hand, in light of the Court's decision to extend the objection deadline, it will nevertheless address the merits of her objection.

In doing so, however, the Court first concludes that the Settlement Class strongly supports Settlement Class Counsel's request for attorneys' fees of 33⅓% of the Settlement Fund, based on the fact that only one untimely objection was made. *See In re Wireless Tel. Fed. Cost Recovery Litig.*, 396 F.3d 922, 924 (8th Cir. 2005).

### g.    An Award of 33%⅓ of the Settlement Fund is Consistent With Other Attorney Fee Awards in this Jurisdiction

The Eighth Circuit has not set forth a specific benchmark to analyze the reasonableness of attorney fees under the percentage-of-the-fund method.  In this Circuit, courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions."  *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable); *In re Xcel*, 364 F. Supp. 2d at 998 (collecting cases demonstrating that this district routinely approves fee awards of 33%).  Indeed, this Court has recently approved attorney fee awards in other cases amounting to between 30-36% of a common settlement fund.  *See, e.g., EEOC v. Faribault Foods, Inc.*, Civ. No. 07-3976, 2008 U.S. Dist. LEXIS 29132, at *13 (D. Minn. Mar. 28, 2008) (approving fee award of approximately 30% of the settlement  fund); *Carlson*, 2006 U.S. Dist. LEXIS 67108, at *22  (approving a fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund). The Court therefore finds that an attorney fee award of 33⅓% is certainly within the range established by other cases in this District.

Despite the fact that there is ample authority for the award requested by Settlement Class Counsel, Ms. Sweeney contends that "[b]ased upon the size of the Settlement Fund, the Court should award total fees and costs to counsel in an amount not exceeding approximately 25% of the Settlement Fund." (Doc. No. 44 at 3). In making her argument, Sweeney relies on a single study of fee awards. That study actually supports a 27.9% attorneys' fee award to Settlement Class Counsel here – 2.9% more than that suggested by Ms. Sweeney. Nevertheless, Ms. Sweeney asserts that a "25% fee would pay Class Counsel $4.125 million for their services, which were rendered in a period of *slightly more than one year*." (*Id*. at 4 (emphasis added).) This argument seems to be based on the mistaken understanding of the history of this litigation, which has actually been pending for nearly six years – with Named Plaintiff Judith Yarrington filing her Complaint in a Minnesota state court on March 30, 2004. (Doc. No. 31). The Court finds Sweeney's argument unpersuasive and the request for fees of 33⅓% of the Settlement amount to be fair, reasonable, and well-supported by authority in this District.

### 3. A Cross-Check Using the Lodestar Method Confirms that the Attorneys' Fees Sought Are Reasonable

The lodestar method confirms the appropriateness of the requested fee award. "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case. The resulting multiplier need not fall within any pre-defined range, so long as the court's analysis justifies the award, such as when the multiplier is in line with multipliers used in other cases." *In re Xcel*, 364 F. Supp. 2d at 999.

The Declarations submitted in connection with the fee request indicate that Settlement Class Counsel's collective lodestar as of the time of filing their motion was $2,409,135 for 5,453.5 total hours worked.  (Gustafson Dec., ¶ 7; Sobol Dec. ¶ 29.) Based on the collective lodestar, a multiplier of 2.26 resulted, at that time, from awarding 33⅓% of the $16,500,000 settlement fund.  The Court finds that an analysis of the relevant factors in determining the reasonableness of fee awards using the lodestar method demonstrates that a collective lodestar and 2.26[2] multiplier is fair and appropriate.

The Eighth Circuit has identified four factors in setting a reasonable lodestar fee: (1) the number of hours counsel expended; (2) counsel's "reasonable hourly rate"; (3) the contingent nature of success; and (4) the quality of the attorneys' work.  *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 127 (8th Cir. 1975).  Additionally, "in cases where fees are calculated using the lodestar method, counsel may be entitled to a multiplier to reward them for taking on risk and high-quality work."  *In re UnitedHealth Group Inc. PSLRA Lit.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009).  Each of these factors supports Settlement Class Counsel's request for attorneys' fees.

First, the Court recognizes that Settlement Class Counsel have expended over 5,453.5 hours to litigate and resolve this dispute.  The specific steps taken by Settlement Class Counsel have already been discussed, but it is worth noting again that the diligence

---

[2] The Court also recognizes that the current multiplier will continue to decline (as it has even since January 29, 2010) as Settlement Class Counsel continue to commit substantial time and resources *after* final approval relating to issues involving the distribution of *cy pres* awards, claims administration, and the Settlement Account.

and efficiency of counsel is directly responsible for the substantial settlement award received by the Class.

Second, the Court recognizes that Settlement Class Counsel's customary rates, which were used for purposes of calculating lodestar here, are based on prevailing fees for complex class actions of this type that have been approved by other courts. (Gustafson Dec., ¶ 10; Sobol Dec., ¶ 32.)

Ms. Sweeney argues that Settlement Class Counsel's fees are excessive and should be capped at $500 per hour.  In response, Settlement Class Counsel demonstrated that even if such a cap were accepted, recalculation of the lodestar would result in a multiplier of only 2.49, still well below that commonly approved in this District.  *See, e.g., In re Xcel*, 364 F. Supp. 2d at 999 (finding lodestar multiplier of 4.7 reasonable); *In re St. Paul Travelers Sec. Litig.*, Civ. No. 04-3801, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (approving multiplier of 3.9).

Even if Settlement Class Counsel's lodestar were calculated as demanded by Sweeney, she has conceded that the result would be a multiplier of 3.35 – *less* than that approved in *Xcel* and *St. Paul Travelers*.  (*See* Doc. No. 43 at 5.)  Moreover, while Sweeney suggests that Settlement Class Counsel "calculated all attorney time at $500/hour, rather than the $500 per hour for partners and $200 per hour for all other attorneys set forth in *United Health*" (Doc. No. 52 at 2), Settlement Class Counsel's billing records reveal that Sweeney is mistaken.  Settlement Class Counsel provided the Court with a recalculated lodestar using a $500 per hour cap for partners only.  (*See id.*)

Sweeney also erroneously suggests that *United Health* limits Settlement Class Counsel's non-partner and paralegal rates to $200 per hour and $100 per hour, respectively. (Doc. No. 52 at 2). The Court finds that *United Health* imposes no such limitation. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, 2008 WL 682174, at *15 (D. Minn. Mar. 7, 2008) (discussing $400 hourly cap for *all* categories of attorneys and $150 per hour cap for paralegals).

For these reasons, the Court is not persuaded by the objections of Ms. Sweeney to Settllement Class Counsel's hourly rate.

Third, the Court recognizes that Settlement Class Counsel took this case on a contingency basis, working without pay for nearly six years. (Gustafson Dec., ¶ 6; Sobol Dec., ¶ 32.) At several difficult stages of the litigation, Settlement Class Counsel continued to aggressively advocate for the Class at both the trial and appellate levels. This case presented several factual and legal challenges that could have prematurely terminated the case, yet Settlement Class Counsel deftly addressed each of them, resulting in a significant benefit to the Class.

Finally, the Court finds that Settlement Class Counsel performed high-quality work in moving this case from the initial Complaint through settlement. Counsel coordinated discovery, reviewed documents, engaged in extensive motion practice (at both the trial court and appellate level), appeared at conferences and motion hearings before the Court, filed a motion for class certification, prepared for and participated in numerous mediation sessions, drafted and negotiated the Settlement Agreement, and prepared the motions for preliminary and final approval. (Sobol Dec. ¶ 34.)

The Settlement Agreement provides that Plaintiffs' Counsel may seek an attorneys' fee award equal to 33⅓% of the Settlement Fund.  That award provides for a modest 2.26 multiplier of Settlement Class Counsel's lodestar, which is reasonable, given the risks of continued litigation, the high-quality work performed, and the substantial benefit to the Class.  In sum, the Court finds that a cross-check using the lodestar method confirms that Settlement Class Counsel's request for 33⅓% of the Settlement Fund is a reasonable attorneys' fee award.

### 4.     The Costs For Which Settlement Class Counsel Seek Reimbursement Are Reasonable

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement."  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (*citing Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)); *see also In re UnitedHealth*, 631 F. Supp. 2d at 1160.  The requested costs must be relevant to the litigation and reasonable in amount.  *See Carlson*, 2006 U.S. Dist. LEXIS 67108, at *22.

As set forth in the Declarations of counsel, Settlement Class Counsel has incurred substantial out-of-pocket expenses totaling $ 245,720.31. (Gustafson Dec., ¶11; Sobol Dec., ¶ 33.)  Pursuant to the Settlement Agreement, Settlement Class Counsel seek reimbursement for these costs. (Gustafson Dec., Ex. A, § V.D.)  As the Declarations reflect, the costs incurred included filing fees; expenses associated with the research, preparation, filing, and responding to the pleadings in this matter; costs associated with copying, uploading, and analyzing documents; fees and expenses for experts; and

mediation fees. (Gustafson Dec., ¶¶ 11-12; Sobol Dec., ¶ 34.)  All of these costs and

expenses were advanced by Settlement Class Counsel with no guarantee they would

ultimately be recovered, and most were "hard" costs paid out of pocket to third-party

vendors, court reporters, and experts.  (*Id.*)

As for certain computer-based legal research, Ms. Sweeney objects that such costs

are not recoverable under Eighth Circuit law.  (Docket No. 52 at 3.)[3]  But the cases cited

in the objection – *Standley v. Chilhowee R-IV School District*, 5 F.3d 319 (8th Cir. 1993),

and *Leftwich v. Harris-Stowe State College*, 702 F.2d 686 (8th Cir. 1983) – are

distinguishable.  Those cases denied computer-aided legal research costs under federal

fee-shifting statutes, such as 42 U.S.C. § 1988.  Here, however, the costs are sought not

by statute, but rather as part of the terms of a negotiated settlement.  Hence, the Court

does not believe it is constrained by the holdings in *Standley* and *Leftwich* that

"computer-aided research . . . is a component of attorneys' fees and cannot be

*independently taxed* as an item of cost."  *Standley*, 5 F.3d at 325 (emphasis added)

(quoting *Leftwich*, 702 F.2d at 695).  Indeed, the Court notes that decisions in this District

and elsewhere have allowed class counsel to recover computerized research costs in

addition to an award of attorneys' fees, when part of a negotiated settlement.  *See, e.g., In

re UnitedHealth*, 631 F. Supp. 2d at 1160 (reimbursing class counsel $175,000 for

computer research under terms of negotiated settlement); *In re Xcel*, 364 F. Supp. 2d at

1000 (finding that costs including computerized legal research are recoverable as part of

---

[3] Lieff Cabraser seeks reimbursement of $32,504.19 for computer related research;
Gustafson Gluek seeks reimbursement of $1,658.29.

settlement of class-action litigation); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (same).[4]  Accordingly, Settlement Class Counsel's request for reimbursement of these costs will be granted as well.

Ms. Sweeney also contends that another $937 – relating to books, subscriptions, supplies and telephone charges – is "clearly overhead and should remain in the Settlement Fund for distribution to the Class."  (Doc. No. 52 at 4.)  As with computer-aided legal research, however, the Court perceives no reason why such costs cannot be awarded pursuant to the terms of an agreed-upon settlement.  And again as with computer-aided legal research, other decisions have approved the reimbursement of such costs.  *See In re Xcel*, 364 F. Supp. 2d at 1000 (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class-action litigation).  The Court agrees that such costs are reimbursable here.

E.      **A Service Award to the Named Plaintiffs is Appropriate**

The Settlement Agreement provides for payment to each Named Plaintiff of $5,000.00.  (Gustafson Dec., Ex. A, § V.C.)

---

[4] In any event, it is unclear whether *Standley* and *Leftwich* represent a hard-and-fast rule in the Eighth Circuit.  *See Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Benefit Plan*, 25 F.3d 616, 623-24 (8th Cir. 1994), *abrogated on other grounds by Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966 (8th Cir. 2002).  *Lutheran Medical Center* found no abuse of discretion in a district court's award of nearly $50,000 in attorneys' fees and costs that included, *inter alia*, "the costs of travel, long-distance telephone calls, facsimile transmissions, photocopying, delivery services, *computerized legal research*, and copying of medical records."  *Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Benefit Plan*, 814 F. Supp. 799, 805 (D. Neb. 1993).

The Court finds that enhancement awards like the ones requested here are appropriate.  Small incentive awards, which serve as premiums to any claims-based recovery from the Settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.  *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *see also* Manual for Complex Litig., § 21.62 n. 971 (4th ed. 2004) (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). ).

The Court recognizes that, unlike unnamed Class Members who will enjoy the benefits of the Settlement without taking on any significant role, the Named Plaintiffs made significant efforts on behalf of the Settlement Class and participated actively in the litigation.  They each participated in numerous lengthy interviews by Settlement Class Counsel; assisted in responding to multiple discovery requests; were deposed by Solvay, and answered questions regarding extremely sensitive and personal medical information regarding their use of a hormone replacement therapy drug and the symptoms surrounding their menopausal conditions.  (Sobol Dec., ¶ 35.)  They each consented to the disclosure of their personal medical records, including records regarding their mental health and menopausal symptoms.  (*Id*.)  Each consented to have their prescribing doctor deposed and to the disclosure of their prescription records.  (*Id*.)  They participated in decisions relating to the settlement of the case as part of the settlement process.  (*Id*.) The valuable efforts of the Named Plaintiffs, their willingness to litigate and pursue their representative claims, and the strength of their claims, have resulted in a settlement that will benefit all Settlement Class Members.  (*Id*.)  Under these circumstances, a service

award of $5,000.00 is inherently reasonable.

Moreover, the $5,000 payments requested here are at the modest end of the

spectrum, especially considering the total amount of the Settlement Fund.  *See, e.g.,*

*Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009

(awarding two lead plaintiffs $15,000 incentive awards from a common fund settlement

of $17,000,000); *In re Xcel*, 364 F. Supp. 2d at 1000 (awarding $100,000 collectively to a

group of eight lead plaintiffs); *In re Employee Benefit Plans Sec. Lit.*, No. 3-92-708, 1993

U.S. Dist. LEXIS 21226, at *23 (D. Minn. June 2, 1993) (approving attorneys' fees of

33.3% and incentive awards of $5,000 to each of the three representative plaintiffs from a

common fund settlement of $10.7 million).  In light of their considerable effort and risk

undertaken to obtain the outstanding result for the Class, the Court approves the

payments of $5,000 service awards to each of the Named Plaintiffs.

## II.     <u>CONCLUSION</u>

Based on  the foregoing, and all the files, records, and proceedings herein, **IT IS**

**ORDERED** Plaintiffs' Motion for an Order (a) awarding Settlement Class Counsel

reimbursement of $245,720.31 in expenses; (b) awarding the four Named Plaintiffs

$5,000 each as a service award; and (c) awarding Settlement Class Counsel reasonable

attorneys' fees of $5,445,000 is **GRANTED** in its entirety.


Dated:  March 16, 2010                    s/Richard H. Kyle
                                          RICHARD H. KYLE
                                          United States District Judge